JAMES ROBERTS

v.

JOHN STEPHENS.

*Injunctions—Way—Obstruction of.*

Upon a bill filed to enjoin defendant from obstructing a way over his lot, complainant contending that the same was appendant to his, this court holds, it appearing that the same had been used with the defendant's consent for two years after the purchase by him of the lot through which it runs, that its location was fixed as to him, and that the decree in his favor can not stand.

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of McDonough County; the Hon. C. J. SCOFIELD, Judge, presiding.

Messrs. LAWRENCE Y. SHERMAN and AGNEW & VOSE, for appellant.

It is not required that appellant's way should be a physical necessity for the enjoyment of his estate; it suffices that it is highly convenient and beneficial therefor. Cihak v. Klekr, 117 Ill. 643.

But the law that only ways of necessity will be reserved as appurtenant to the dominant estate, applies to those created by implication of law alone. Washburn on Easements and Servitudes, 4th Ed., 94–5; Ingals v. Plamondon, 75 Ill. 118.

While appellant was owner of both lots, he arranged and disposed the several parts thereof so as, among other things, to create the way in controversy; he then conveyed to appellee's grantor.

Thereupon the unity of the estate was severed, the way became appendant to appellant's lot and the estate of appellant's grantee became subject to the servitude.

"The foundation of the doctrine of easements in this and similar classes of cases is a disposition and arrangement of the premises as to the uses of the different parts by him having

the unity of seizin and then a severance.    It being a general principle in relation to grants that every grant of a thing naturally and necessarily imports a grant of it as it actually exists; unless the contrary is provided for, it would seem to follow that each portion of the several premises should pass subject to all the burdens and advantages imposed or conferred by the proper owner." Morrison v. King, 62 Ill. 30, and cases cited; Washburn on Easements, etc., page 90, 4th Ed.; Shieds v. Titus, 22 N. E. 719 (Ohio, 1889); Lampman v. Milks, 21 N. Y. 505; Devlin on Deeds, Vol. 2, Secs. 841–2.

The language of the reservation is equivalent to reserving a way "where the road now is." This latter expression is held to fix a way with sufficient accuracy. Brill v. Brill, 15 N. E. 538 (N. Y. 1888).

Where land is conveyed "with all the ways, appurtenances * * * to the same belonging," any easement or appurtenances already existing and belonging to the land will pass. 2 Devlin on Deeds, Sec. 864, pages 152, 153.

Where a right of way is described in the grant as " on or near " a designated boundary line, the ambiguity of the *locus* of the way grew out of the indefinite point of divergence of the way from plaintiff's land; it could answer the call in the deed by either of two directions; the defendant by his acts gave a construction to the grant and practically explained the ambiguity in its terms by fencing along the way; nor does a change of lines by a new survey affect the way so fixed; we think this case is in point. Fritsche v. Fritsche, 45 N. W. Rep. 1088.

Where there is an ambiguity in the clause reserving the way, the practical construction given it by the acts of the parties subsequent to the execution of the deed may be shown by parol; appellee is bound by the practical construction of the deed by his grantor. 2 Devlin on Deeds, Sec. 851, 1042, 1043; see Garrison v. Nute, 87 Ill. 215.

The purchaser of the servient estate is charged with notice of the servitudes openly existing at the time of the conveyance.

Visible objects and structures upon or attached to the

servient estate and which appellee might, by the ordinary use of his senses, see or know of, are notice.   2 Pomeroy's Eq., 41, 48, 51, 53; Id., page 19, Sec. 739.

Appellant had open possession of way; this is notice. Franklin v. Pollard Mill Co., 6 So. Rep. 686.

Wherever a purchaser holds under a conveyance and is obliged to make out his title through that deed or through a series of prior deeds, the general rule is firmly established that he has constructive notice of every matter connected with or affecting the estate, which appears either by description of parties, recital, reference or otherwise, on the face of any deed which forms an essential link in the chain of instruments through which he derives title.   2 Pomeroy's Eq., 65, 66, Secs. 626, 627; 2 Devlin, 302–3, Secs. 1000, 1002.

Acts essentially destructive of way or continuous trespasses, bill to restrain is proper remedy, and actual or constructive notice binds purchaser.   Willoughby v. Lawrence, 116 Ill. 11; McCann v. Day, 57 Ill. 101; Clarke v. Gaffeney, 116 Ill. 364; Herman v. Roberts, 23 N. E. 442 (N. Y. Jan'y, 1890); 3 Pomeroy's Eq., Secs. 1295, 1342, 1357; 1 Id. Sec. 271.

When it appears by fair interpretation of the words of a grant, that it was the intention of the parties to create or reserve a right in the nature of a servitude or easement in the property granted, then uncertainty or ambiguity may be solved by the circumstances of the thing granted and the situation and conduct of the parties.   Kuecken v. Voltz, 110 Ill. 270; Herman·v. Roberts, 23 N. E. 442 (N. Y., Jan'y, 1890).

If appellee may at pleasure disturb the long settled relations to each other of those two contiguous lots, appellant's repose in the enjoyment of his easement may be violated whenever appellee's caprice or fancy prompts him to again readjust the roadway for the alleged improvement of his lot; we do not understand the law reduces appellant's easement to such a delusive and vacillating right after it has been once fixed by the acts and conveyances of the parties.

Messrs. PRENTISS & BAILY, for appellee.

PLEASANTS, J.   This was a bill to enjoin appellee from obstructing a way over his lot, which appellant claimed as appendant to his.   Their premises adjoined.   Complainant formerly owned both and had them in one inclosure.   On September 1, 1884, he conveyed, what is now the westerly one, to William Harper, "reserving," as expressed in the deed, " the right of way over the south part of said tract for transit for fuel."   The tract conveyed is 277 feet in length, north and south, seventy-seven feet in width at the north end and fifty-two at the south, and adjoins Roberts' second addition to the city of Colchester.   The way or road in question runs east and west, the north side being 153 feet south of the north line of the lot, or about fifteen feet south of the middle line.

Appellee admits that he has obstructed this road.   He admits also that appellant has a right of way over the south part of his lot, but denies such right over this particular road ; and he claims that he has provided for and offered to him the use of one entering the lot at the south end.   On final hearing the bill was dismissed.

The evidence clearly shows that for some years before and at the time of the conveyance to Harper, appellant had used the road in question.   His coal house was built abutting on it, just east of the line dividing the lots.   His garden adjoined the Harper lot on the south and still adjoins it.   Harper erected a coal house on his lot, in line with and about eight feet from that of appellant, in accommodation to the road. He, also, with the assistance of appellant, put a gate on the west line, where the road entered the lot.   Both the parties recognized and used it as the way intended by the reservation, during all the period of Harper's possession.   The posts at the ends of the gate were eight inches higher than the adjacent fence, and the line of the road was indicated by tracks of the wagons and horses, though it was not much used. Appellant had occasion to use it only once or twice a month, but an ordinary observer, with ordinary sight, could readily see and trace it by these means.

On April 30, 1887, Harper conveyed the lot to appellee, also reserving by his deed " the right of way over the south

part of said tract for transit for the right to convey fuel to and from," etc. Possession was given immediately, and appellee, like his grantor, acquiesced in the continued use of the road by appellant as before and used it himself in like manner, until the summer of 1889, when he moved his coal house and obstructed the way as charged in the bill. The defense is that this road was not over the south part of said tract, and that the reservation was not of a right over any specific road.

We think that in its ordinary and popular sense "the south part" is a description in contradistinction to the north part only. It does not suggest the idea of a middle part. A middle part is no specific part, but any that is embraced in any two lines between the north and south or the east and west boundaries, that are parallel with and equidistant from the middle line.

The south part suggests and supposes a north part, and each is certain—the one being all that lies south and the other all that is north of the middle line east and west. Of these two, the road in controversy was certainly not over the north part. It is said these terms here meant the south end or side of the tract. If "end" and "sides" are such "parts" as could support a road they are as uncertain as a "middle" part, unless they mean in this connection the same as "part," and we think they do.

Before appellant conveyed to Harper, there was an old rail fence on the west and north lines of the tract, without gate or bars, which was occasionally taken down, and at other points, by persons coming on with teams, but appellant himself entered at the point where the gate was afterward put. Harper removed the old rails and built a picket fence instead, in which he set the gate on hinges. That was the point on the west line that was nearest to appellant's coal house (which was due east), and very considerably nearer than any on the north or south lines. Hence his selection and use of that as the way to it from the city of Colchester. There can be no reasonable doubt, from the evidence, that that was the way he intended to reserve, nor that Harper so

understood and agreed to it, and intended the same specific way by the reservation in his deed to appellee. Appellant's deed was on record and the way was traceable on the land when appellee purchased, and the same use was thereafter continued, with his knowledge and consent, for more than two years. These facts, in our opinion, fixed the location as against him, if the terms of the reservation did not. He had no more right to change the point of entrance on his tract than the terminus on appellant's.

We infer from the argument for him, and from the evidence, that the decree must have been based on one or both of the points made by counsel here, and above stated. For the reasons indicated it will be reversed and the cause remanded. ·

*Reversed and remanded.*