CASE 106—PETITION ORDINARY—FEBRUARY 7.

# Halbert, &c., v. Maysville, &c., Railroad Company.

98  661
108  672

APPEAL FROM LEWIS CIRCUIT COURT.

1. RAILROADS—ADVERSE POSSESSION.—Where one who purchased a farm over which a railroad company had previously purchased and granted a right of way entered "in subjection to and friendship with the right of way," the cultivation by him of the farm and the erection of an occasional line of fencing on or about the right of way did not tend to show an adverse holding.

2. SAME—ACQUIESCENCE IN CONSTRUCTION OF ROAD.—Even if the possession was adverse and so continued for fifteen years, the adverse claimant, by knowingly permitting the railroad company, which had paid his grantor for the strip of land and held the legal title, to re-enter and erect costly improvements, must be treated as having abandoned the adverse claim in favor of the real owner, and he can not, therefore, recover damages. The rule that where an owner who has never received compensation for the use of his land acquiesces in the construction of a railway over it, he may, although estopped to recover the land, recover damages, has no application.

THOMAS H. HINES FOR APPELLANTS.

Acquiescence and tacit consent by the owner of land to the construc-
tion of a railroad through it does not prevent the owner from re-
covering for damages to the land. (St. Julian v. Railroad Co., 35
La. Ann., 924; Milwaukee & Northern R. Co., v. Strange, 63 Wis.,
178; Allen v. Wabash &c. R. Co., 84 Mo., 646; Thornton v. Shef-
field &c. R. Co., 84 Ala., 109; s. c., 5 Am. St. Rep., 337.)

WADSWORTH & COCHRAN FOR APPELLEE.

There was no evidence that warranted leaving the case to the jury to
determine whether or not there had been fifteen years' adverse
possession of appellee's right of way.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

In 1854 the appellee became the owner, by purchase from
Proctor & Bedinger, of a strip of some six acres of land, upon
which, after paying the purchase price and having its deed
recorded, it proceeded to the construction of its roadbed.
After grading the right of way, building some culverts and
preparing the bed for cross-ties and rails, the entire construc-
tion of the road was suspended for want of funds.

Shortly after this (1856) W. C. Halbert bought and ob-
tained possession of the Proctor & Bedinger farm, of some
three hundred acres, through which the proposed, and par-
tially completed, road of the appellee ran, but did so "in sub-
jection to and friendship with the appellee's right of way,"
as admitted in this record.

No further progress was made toward completing the
road until in 1871, when on some other sections work was re-
sumed, but on the Halbert farm only the lines were retraced
by the engineer of the company.

In 1877 Halbert died, having devised his lands to his wife
for life, with remainder to his children. In 1886 the appel-
lee, with the knowledge and acquiescence of these devisees,
entered upon the right of way, and, at an expense of several

thousand dollars, completed their road, which is yet in operation. Thereupon the widow and children brought this action for damages. Upon the conclusion of the testimony a peremptory instruction for the defendant was given, and the petition dismissed. We think properly so.

The possession of Halbert was altogether consistent with the interest of the real owner. His entry was admittedly subservient and friendly to the claim of the legal title holder. The proof discloses that he continued an active promoter of the road, and in frequent talks with its president and chief engineer urged its completion on the line in part built through his own farm. At no time during his long association with these officials did he ever assert or intimate a claim of title to this right of way. In the language of Wadsworth, the president, "he was exceedingly active to promote the building of the road, and expressed himself as willing to do all he could to have it built. He certainly never set up any such idea—that he claimed anything as to the right of way. He wanted the road to go right along—right through on that piece of ground."

The cultivation of the farm and the erection of an occasional line of fencing in or about the right of way did not constitute an adverse holding, and was not sufficient proof of it to require a submission of the question to the jury. But if it be admitted that Halbert's possession was adverse, the condition of appellants would not seem to be improved.

Where an owner who has never received compensation for the use of his land acquiesces in the construction of a railway over it, he is estopped from recovering the land, but may recover damages. But where a mere claimant under an adverse holding, whose grantor has been compensated for the land, so acquiesces and knowingly permits the purchaser and legal title holder (the company) to re-enter and erect

costly improvements, this acquiescence must be treated as an abandonment of the adverse claim in favor of the real owner. Such conduct would be inconsistent with the claim, and be misleading to the entering owner.

In no aspect of the case, therefore, do we find the trial court in error, and the judgment is affirmed.