## Hammonds, et al. v. Eads, et al.

(Decided January 10, 1912.)

Appeal from Lincoln Circuit Court.

1. Passways—Easements—Private Way.—Private ways are never presumed to be personal when they can be construed to be appurtenant to the land; they are of the nature of convenants running with the land; and though an easement such as a right of way may be

created by a grant in gross, this is never to be presumed when it can be fairly construed to be appurtenant to some other estate.

2. Same—When Easement Appurtenant.—An easement is appurtenant and not in gross when it appears that it was for the benefit of the grantee's land; and a right of way is appurtenant to the land of the grantee, if so in fact although not declared to be so in the deed. Whether a grant of an easement is in gross, or appurtenant to some other estate may be determined by the relation of the easement to such estate, or the absence of it, and in the light of circumstances under which the grant was made.

3. Same—Deed—Notice.—A deed to be notice must so reasonably describe the land passed by it as to enable one who inspects the record for titular purposes to know what land is embraced in the conveyance.

J. B. PAXTON for appellant.

P. M. McROBERTS for appellees.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The Hanging Fork is a stream of some magnitude in Garrard County, Kentucky. At the beginning of 1894, A. M. Feland owned a tract of land on one side of the stream and between it and the Stanford and Danville turnpike. Across this stream from him at the time lived Mrs. Lucinda Tribble, on a boundary of land owned by her. On January 3rd of that year Feland conveyed to Mrs. Tribble the back part of his boundary, being that part which lay immediately across the Hanging Fork from the boundary already owned by her. His deed to her was in the customary form, concluding with a covenant of warranty. Immediately after the warranty was added this clause: "It is further agreed that when the Hanging Fork is past fording and the grantee can not get across same to the above land, she is to have the right to pass over the other lands of the grantor to same." The purpose of this provision, of course, was to afford Mrs. Tribble, as an incident or appurtenance to the land purchased by her, a means of access thereto around by the turnpike and over Feland's other lands at such times as she could not cross the Hanging Fork from her old to her new boundary. On February 26, 1902, Lucinda Tribble conveyed both the old and the new boundaries to Mattie E. Eads, the appellee. The deed to Mrs. Eads did not mention in any way, nor make any reference whatsoever, to the right granted to Mrs. Trib-

ble to travel over the other lands of Feland to the lands which he sold to Mrs. Tribble.

After the death of Feland his "other lands" named in his conveyance to Tribble in the quotation supra were sold by the Master Commissioner in February, 1909. At the Commissioner's sale these other lands were purchased jointly by one J. T. Hackley and the appellant, Pharoba Hammonds. Subsequently they divided their purchase. Shortly thereafter Mrs. Hammonds erected a fence across the route which had been traveled by Lucinda Tribble over the other lands of Feland in high water time; whereupon Mrs. Eads brought her action against Mrs. Hammonds, seeking an injunction in substance to open and keep open the way. Their respective consorts were made parties. She charged the necessity of using the route from her land on that side of the Hanging Fork upon the many times when it was past fording; that the way was appurtenant to her lands and passed to her with the Tribble deed; that the way was well defined at the time of the purchase by Mrs. Hammonds, and that she, Mrs. Hammonds, had actual notice of the existence of the right of passway across the other Feland lands, before her purchase thereof. Issue was joined; but the court struck from the answer of Mrs. Hammonds the denial that the right of passage was appurtenant to Mrs. Eads' land; and the denial that such right of way was included in the deed from Mrs. Tribble to Mrs. Eads; and the denial of Mrs. Eads' ownership of it. Proof was taken and judgment entered awarding Mrs. Eads the passway. From that judgment Mrs. Hammonds prosecutes this appeal.

The first question in the record is whether the right to pass over the other lands of Feland was a personal right in Lucinda Tribble; or whether it was appurtenant to the lands. This question is answered by the opinion of this court in the case of Johns, et al. v. Davis, et al., 76 S. W., 187. In this case this court said that private ways are never presumed to be personal when they can be construed to be appurtenant to the land; they are of the nature of covenants running with the land; that, though an easement such as a right of way may be created by a grant in gross, this is never to be presumed when it can be fairly construed to be appurtenant to some other estate; that an easement is appurtenant and not in gross when it appears that it was granted for the benefit of the grantee's land; that a right of way is appurtenant

to the land of the grantee if so in fact, although not declared to be so in the deed; that if the way leads to the grantee's land and is useless except for use in connection with it, and after the grant, was used solely for access to such land, it is appurtenant to it; that whether a grant of an easement is in gross or appurtenant to some other estate may be determined by the relation of the easement to such estate, or the absence of it, and in the light of circumstances under which the grant was made. In support of the rule adopted cases from a number of States were cited in the opinion, including the case of Combs v. Stewart, 10 B. Mon., 463. The language used in the quotation above made from the deed of Feland to Tribble suffices of itself to show that the easement granted over the other lands of Feland was appurtenant to the land sold by Feland to Mrs. Tribble. It carries with it the conviction that it was to be utilized in the farming of the lands named in the conveyance, and for any of the necessary incidents of farming operations, such as the care of stock, the farming of crops, the visitation of tenants, and any other ordinary attribute of farm work, at all such times as access could not be had to the land by Mrs. Tribble across the Hanging Fork by reason of high water.

The next question that arises is, since it was appurtenant to the land as just described, whether such appurtenance passed under Mrs. Tribble's deed to Mrs. Eads when no mention of it was made in the conveyance from Mrs. Tribble to Mrs. Eads whereby the land was deeded to the latter. This question finds its answer in the case of Conley v. Fairchild, 142 Ky., 271 S. C., 134 S. W., 142. In this case one Gullet owned a tract of land and had, as an appurtenance to it as matter of right, a passway over adjoining lands. He sold his lands to Fairchild and made no mention of the said right of passway. The owner of the land over which the passway lay endeavored to exclude Fairchild from its use. The litigation arose and came to this court. In the opinion it was said: "It will not do to say that a right or appurtenance which belonged to Gullet's land did not pass with its conveyance the cause not especially set out or named in the conveyance. The true rule would seem to be that it did pass, unless expressly reserved." Mrs. Tribble's deed to Mrs. Eads, like Gullet's deed to Fairchild, neither conveyed nor reserved the passway appurtenant to the land conveyed. The rule set out, therefore, in the Fair-

child case must govern here; and it results that the right of way over the other lands of Feland, appurtenant to the boundary in question, passed, under Mrs. Tribble's deed, to Mrs. Eads; and that the latter had every right of passage over such other lands as had Mrs. Tribble.

The next question is, had Mrs. Hammonds, at the time of her purchase of the other Feland lands, such notice of the existence of the right of Mrs. Eads to pass over such lands in high water times, as would prevent her from excluding Mrs. Eads from its use. Such notice, of course, may be either actual, or such notice as would be imputed from some legal record evidence. We do not incline to the view that the mere statement of the right of way as across the other lands of Feland, in his recorded deed of a specific boundary of land, would suffice to put upon notice a subsequent purchaser of such other lands. A deed to be notice must so reasonably describe the lands passed by it as to enable one who inspects the record for titular purposes to know what precise land is embraced in the conveyance. But in the case at bar, this question may be regarded as immaterial; for Mrs. Eads, in her petition, charged that before the purchase of Feland's other lands by Mrs. Hammonds, she had caused actual notice of the right of passage over such other lands to be brought home to Mrs. Hammonds; and upon a denial of this allegation Mrs. Eads put into the record testimony which seems to us to be entirely sufficient to warrant the conclusion that such notice had been brought home to Mrs. Hammonds. Mrs. Eads testifies that she sent her stepson, Hugh Eads, with her deed, to Mr. Hammonds, one of the appellants and the husband of Pharoba Hammonds, before the Hammonds purchase, for the purpose of acquainting him with the existence of the passway; that she took this step because she had learned of the possible purchase by Hammonds and deemed it prudent for the notice to be brought home before the purchase. Hugh Eads testifies that upon the Friday before the Commissioner's sale, at which Mrs. Hammonds bought, he took to Mr. Hammonds the deed from Feland to Lucinda Tribble and a deed from Lucinda Tribble to Mattie Eads; that he took these deeds at the request of Mattie Eads and delivered them to Mr. Hammonds; that he told Mr. Hammonds then that there were the two deeds that Mrs. Eads had sent him in regard to the road over the farm that she had a right to

when the creek was past fording; that he opened the deed and showed Mr. Hammonds that she had the right of way any time when the creek was past fording. It is true that the conveyance stood not in Mr. Hammonds, but in his wife. It is evident throughout the testimony, however, that he was acting for her in the purchase of the land; he testifies, for instance, that she never saw the land until after the purchase, that the barn on the land had cost him a certain sum of money, and the like. In addition, he testifies fully in the record, which he could not do save for the amendment of 1898 to section 606 of the Civil Code, whereby it was provided that a husband, when acting as an agent for the wife, might testify as to any matter connected with such agency. Mr. Hammonds upon the other hand, says that this transaction did not transpire until Tuesday, the day following the Commissioner's sale. With the two witnesses upon the one side and the one upon the other, there can be no reasonable doubt that there is sufficient testimony to hold the existence of actual notice to Hammonds of the passway. It is suggested in the brief for appellants that this notice, if it was given, was no more effective than the deed of record since it did not disclose what lands were meant by the "other lands" named in the deed; but when Hammonds was then a prospective buyer of the land, and when he saw this evidence of precaution upon the part of Mrs. Eads, when these specific lands had been advertised in the Commissioner's sale and when he was ready to buy, it can not be argued with much force that the prudent step of Mrs. Eads in giving the notice was so general as that he did not know of its application to the specific boundary which he was about to buy.

It is also urged that the provision as to this right of way is so indefinite as to result in its being fatally uncertain. To this position we can not accede. The condition of high and low water in a stream is so surely easy of ocular ascertainment as that there can be no difficulty in determining when it was "past fording;" and at any and all such times the right to ingress and egress over the Feland "other lands" is made certain by the deed. The testimony, we may say in passing, establishes beyond question that there are many times when this stream is past fording at this point.

For the reason set out we find no error in the judgment below awarding Mrs. Eads the relief prayed for. It is, therefore, affirmed.