## Lexington & Eastern Railway Co. v. Hargis.

(Decided May 21, 1918.)

### Appeal from Breathitt Circuit Court.

1. Easements—Extent of Right—Limitation by Use.—Where a right of way over the property of another is granted but the location is not definitely described, the practical use of a particular way, acquiesced in by the parties, fixes the location, and thereafter the location can not be changed by either party without the other's consent.

2. Easements—Obstruction—Action for Damages—Another Roadway—Effect.—The fact that there is another road which plaintiff might use is no defense to an action for obstructing a way to which he is entitled.

3. Easements—Extent of Right—Practical Location—Question for Jury.—In an action for damages for the obstruction of certain roadways, evidence examined and held to make it a question for the jury whether the roadways were established and acquiesced in by the parties at the places claimed by plaintiff.

4. Easements—Obstruction—Character of Injury.—Where a roadway under a railroad trestle is obstructed by a fill, the injury is permanent, but where it is obstructed by stone, which can be readily removed at a small expense, the injury is only temporary.

5. Easements—Obstruction—Injury to Real Property—Temporary or Permanent—Question for Jury—Instructions.—Where the uncontradicted evidence showed that a roadway under a railroad trestle was obstructed only by stones which could be easily removed at a small expense, the trial court should have held as a matter of law that the injury was only temporary and erred in submitting to the jury the question whether the injury was temporary or permanent.

BENJAMIN D. WARFIELD, JAMES J. DONAHUE, O. H. POLLARD and S. M. WILSON for appellant.

CHESTER GOURLEY, SOUTH STRONG, JOHN C. EVERSOLE and HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

On June 8, 1889, James W. Lindon, who was the owner of a large tract of land in Breathitt county, sold and conveyed to the Kentucky Union Railway Company, a right of way through said land, the deed containing the following covenants:

"Said party of the second part agrees and binds itself to construct a good road, to be used as a private passway across said railroad at grade, or underneath said railroad, at its option, which cross-road shall be twelve feet wide with good grade, at 'Hie's Branch'; said cross-road to be so constructed and graded as to enable said parties of the first part or other parties to haul coal, timber, &c., over same on wagons out of the branch above said railroad, to Main Cane Creek. Also to construct similar roads and crossings, in like manner as above described at the Jimmie Branch; also at the Sugar Camp Branch, also at the 'Old House' or 'Meadow Hollow' and also at Granny's Branch. All of these roads are to be constructed and used for the purpose of hauling on same with farm wagons drawn by teams of horses or cattle."

"Said party of the second part further agrees to construct a trestle at the branch where the party of the first part now lives, and also at 'Turkey Branch,' so as to give a good roadway under said railroad and across the said second party's right-of-way. The said roadway at these two hollows to be similar in construction and use to the ones above described, except that these two are to cross underneath said railroad."

Thereafter the Lexington and Eastern Railway Company purchased all the property, rights, privileges and franchises of the Kentucky Union Railway Company. On February, 16, 1899, J. W. Lindon conveyed the land in question to Joanna E. Hargis, wife of A. H. Hargis, reserving, however, a life estate in himself and also in his wife, America Lindon. In the year 1900, J. W. Lindon and his wife, America Lindon, died and Mrs. Hargis then became vested with the entire title to the land.

In the year 1915, Mrs. Hargis, claiming that the roadways or passways constructed at Lindon Branch, Sugar Camp Branch and Turkey Branch pursuant to the covenants in the deed of June 8, 1889, and used by her and her predecessors in title with the acquiescence of the two railway companies for more than twenty years, were obstructed and rendered impassable by the Lexington and Eastern Railway Company, brought this suit to recover damages. From a verdict and judgment in her favor for $2,000.00, the Lexington and Eastern Railway Company appeals.

According to several witnesses for plaintiff, J. W. Lindon's home was located at Lindon Branch. On the opposite side of the railroad was his apple orchard. When the railroad company first constructed its trestle at this point, it extended from one hill to the other and there was left a private passway leading from the enclosure around Judge Lindon's home under the trestle and through a gate into the orchard. This passway was used by the Lindons and appellee, with the acquiescence of the railroad company, until the year 1912, when the railroad company built a fill which entirely closed the passway. At the time, however, that the original deed from Judge Lindon to the Kentucky Union Railway Company was made, there was a public road crossing the proposed right of way at Lindon Branch and this public road is now unobstructed. It further appears from the testimony for plaintiff, that the Kentucky Union Railway Company, in the year 1889, constructed from one foot hill to the other, a trestle at Sugar Camp Branch, and left underneath the trestle a passway which ran through a gate and up a hollow. This passway was about ten or twelve feet wide and went out through the bottom and around to the coal bank and up the creek. In the year 1912, the railway company made a fill at this

point which closed that passway. However, a few feet away is another passway which was left open when the fill was constructed, but according to plaintiff's evidence, this passway is not fit for use by wagons and teams during the winter season. Plaintiff's witnesses also testified that the railway company constructed a steel bridge at Turkey Branch, but in doing so filled up the passway thereunder with large stones so that it could not be traveled by wagons drawn by horses or cattle.

According to the defendant's witnesses, the passway claimed by plaintiff at Lindon Branch, was simply a footpath, or narrow walk-way, which was not intended for wagons and was seldom, if ever, used for that purpose. It was further shown that the public road which had been located at that point for over fifty years, was in fairly good condition and had not been obstructed in any way by the fill. With respect to the passway at Sugar Camp Branch, defendant's witnesses testified that there was now a passway in the bed of the branch of the width of twelve feet which had not been obstructed and that this was the only passway that had ever existed at that point. The same witnesses also testified that there was built at Turkey Branch in the year 1889, a steel bridge which rested on stone and concrete abutments. In the year 1912, an outer jacket of concrete was laid on the stone abutments. In the year 1914, the upper layer of stone was removed and concrete blocks substituted. The stones, some of which weighed as much as half a ton, were thrown underneath the bridge and on one side, thus leaving a space of practically twelve feet in width for the passage of farm wagons. A few stones, however, were left in the driveway. There was also proof to the effect that an expenditure of $25.00 would put the passway at Turkey Branch in as good condition as it was before the work on the bridge in 1914 was done.

The court gave the following instructions:

"1. The court instructs the jury, that, if they shall believe from the evidence that the Kentucky Union Railway Company, the predecessor of the defendant, Lexington & Eastern Railway Company, under the deed mentioned in the evidence from J. W. Lindon and America Lindon, his wife, to said Kentucky Union Railway Company, dated June 8th, 1889, constructed, or there

then existed and it left under the trestles it constructed at the branch where said Lindon and wife then lived and at Sugar Camp Branch and under the bridge where it constructed at Turkey Branch, private passways of the width of twelve feet sufficient for the use thereof by wagons drawn by horses or cattle, and that the plaintiff and her grantors used and claimed such passways, if any there were under either of said trestles of said bridge, as passways provided for in said deed from the time of the original construction of said railroad at said points until the reconstruction thereof in or about the year 1912 and that the defendant and its predecessor company acquiesced in the location and use thereof, if any there was, as the passway provided for in said deed, and shall further believe from the evidence that in or about the year 1912 the defendants filled up or obstructed such passways or any of them, if any such passways there were, so as to prevent the use thereof by wagons drawn by horses or cattle, then they will find for the plaintiff, J. E. Hargis, and fix her damages as set out in instruction No. 2, but unless they so believe they will find for the defendant.

"2. The court instructs the jury that if they shall find for the plaintiff and shall believe from the evidence that the obstruction, if any there is, of the passways mentioned in the first instruction, if any such passways there were, is temporary and not permanent, they will find for the plaintiff such a sum in damages as will fairly and reasonably compensate her for the diminution in the value of the use, if any, of her said tract of land up to the time of this trial; but on the other hand if they shall believe from the evidence that such obstructions, if any there are, are permanent and not temporary, then they will find for the plaintiff such a sum in damages, if any, as will fairly and reasonably compensate the plaintiff for the diminution, if any, in the market value of said land caused by the filling up or obstructing, if any, of such passways, if any, but their finding, if any they shall make in favor of plaintiff, will not exceed the sum of $5,000.00, the amount claimed in the petition as amended.

"3. If the jury find for the plaintiff they will say in their verdict whether they award damages for permanent or temporary injury. If they find for the defendant they will say so and no more."

Where a right of way over the property or another is granted but the location is not definitely described, the practical use of a particular way, acquiesced in by the parties, fixes the location, and thereafter the location cannot be changed by either party without the other's consent. Bannon v. Angier, 2 Allen 128; New York Carbonic Acid Gas Co. v. Geyser Natural Carbonic Acid Gas Co., 55 App. Div. 128, 67 N. Y. Supp. 439; Wynkoop v. Burger, 12 Johns 222; Gaston v. Gainville & D. Electric R. Co., 120 Ga. 48 S. E. 188; Roberts v. Stephens, 40 Ill. App. 138; Garraty v. Duffy, 7 R. I. 476; Warner v. Columbus & L. E. R. Co., 39 Ohio St. 170; Jennison v. Walker, 11 Gray (Mass.) 423; Moorehead v. Snyder, 31 Pa. St. 514; Winslow v. Vallejo, 84 Pac. (Cal.) 191, 5 L. R. A. (N. S.) 851; 9 R. C. L., sec. 43, p. 786; Calvert v. Weddle, 44 S. W. 648, 19 Ky. Law Rep. 1883; City of Owensboro v. Brocking, 87 S. W. 1086, 27 Ky. Law Rep. 1086. And the fact that there is another road which plaintiff might use is no defense to an action for obstructing a way to which he is entitled. 14 Cyc. 1215; Manbeck v. Jones, 190 Pa. St. 171, 42 Atl. 536. Since the public road at Lindon Branch had already been constructed when the deed of June 8, 1889 was executed, and since the apparent purpose of the deed was to provide for roads to be used as private passways, it is clear, we think, that the covenant to construct a road at Lindon Branch provided for a road other than the public road, and the mere fact that the public road has been suffered to remain at that point can not be regarded as a compliance with the covenant to construct a road there in the absence of evidence that such road was adopted, used and acquiesced in by the parties as the road provided for in the covenant. Under the evidence we think it was a question for the jury whether a passway other than the passway at Lindon Branch was established and acquiesced in by the parties. It was also a question for the jury whether a passway at Sugar Camp Branch other than the one left open by the defendant, was established and acquiesced in by the parties.

If a practical location of the passways at Lindon Branch and Sugar Camp Branch was made by the parties at the places claimed by plaintiff, it is clear that they have been obstructed by permanent fills, and that the consequent injury to the land is permanent. There is

no dispute as to the location of the passway at Turkey Branch. Plaintiff's proof shows that it is obstructed by several large stones. Plaintiff introduced no proof, however, that the damage could not be easily remedied at a small expense.

On the other hand the testimony for defendant was to the effect that the stones could be removed at a cost of about $25.00. In view of the fact that this passway was not obstructed by any permanent structure, but only by stones, which the uncontradicted evidence shows could easily be removed at a small expense, the trial court should have held as a matter of law that the injury was only temporary, and erred in submitting to the jury the question whether the injury was temporary or permanent.

On another trial the court will not leave it to the jury to say whether the injury at each particular place was temporary or permanent, but as to the passways at Lindon Branch and Sugar Camp Branch, will give the measure of damages applicable to a permanent injury, and as to the Turkey Branch the measure of damages applicable to a temporary injury.

In view of the conclusion of the court we deem it unnecessary to determine whether the damages allowed were excessive.

Judgment reversed and cause remanded for a new trial consistent with this opinion.