## Riddle v. Jones.

(Decided June 3, 1921.)

### Appeal from Owen Circuit Court.

1. Easements—Appurtenant or in Gross.—A granted easement in land will be presumed to be one appurtenant to the servient estate and not one in gross; and where the easement consists of a private passway, which is stated in the writing to be for the benefit of the farms of the owners who executed it, it is an appurtenant to the lands and not one in gross.

2. Easements—How Created.—An easement in land may be created by an unacknowledged instrument, but when so executed the deed may not be recorded so as to give constructive notice. It will be binding, however, upon all privies of the grantor with notice, except that his heir or gratuitous grantee will be bound by the grant even without notice.

3. Easements—Defect in Grant of—How Cured.—Although the attempted grant of an easement may not be enforcible because of indefiniteness and uncertainty, still those defects will be cured by the act of the parties in locating and appropriating the passway or other easement.

4. Witnesses—Interest in Subject Matter of Suit.—A witness who is not a party to the suit and who might be incompetent to testify because of his interest in the subject matter of the suit growing out of his warranty in a conveyance of it, may testify when his conveyance is a quitclaim deed only and which removes all further interest of the grantor in the subject matter of the conveyance.

W. A. LEE for appellant.

J. G. VALLANDINGHAM for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant and plaintiff below, Susie G. Riddle, owns an estate for her life in a farm located in Owen county, containing about 200 acres, the south line of which is the New Liberty and Garnett turnpike. Her interest was conveyed to her by deed of gift from her father, Thomas Gayle, which he executed on December 12, 1908, but the grantee was not to have possession until the death of her father, the grantor, which occurred on April 23, 1917. Adjoining the 200 acres on the north is a tract of land containing 183 acres, known in this record as the Brock farm, but which was conveyed to J. C. Jones, the father of appellee and defendant below, Robert C. Jones,

by deed dated March 1, 1907, and which was executed pursuant to a contract theretofore entered into on January 1, 1907. Adjoining the Brock farm on the north is one containing about 100 acres, known in this record as the Cull farm, and it was also owned by Thomas Gayle, the father of plaintiff, from a time prior to 1907 till he conveyed it by deed of gift to another daughter before his death. J. C. Jones died on August 31, 1914, leaving surviving him the defendant, Robert C. Jones, and other heirs who inherited the Brock farm, but which is now owned entirely by the defendant, he having purchased the interest of the other joint tenants.

On April 15, 1918, plaintiff filed this action against defendant seeking to enjoin him and his tenants from trespassing on her land by passing over and across it in going from defendant's farm to the New Liberty and Garnett turnpike and she obtained a temporary restraining order issued by the clerk of the Owen circuit court enjoining defendant from the commission of any of the acts complained of, but which was afterwards dissolved by the circuit judge upon a hearing pursuant to notice. Defendant answered traversing in the main the allegations of the petition and affirmatively alleging that he owned a right of easement to travel from his farm across that of plaintiff to the turnpike, which easement was created by a writing which Thomas Gayle, plaintiff's father, and J. C. Jones, the defendant's father, jointly executed for the mutual benefit of their respective farms on January 7, 1907, and which (omitting dates and signatures) reads: ''This agreement made and entered into between Thomas Gayle & J. C. Jones, we to (two) have this day traded roades, I Thomas Gayle have this day traded J. C. Jones a roade through my farme for one through the Brock farme to get to the Cull farme, said roade is to bee for the use of these too farmes & no other. Said pass way is gated, each party to keepe up his gates.''

At that time there was a road leaving the turnpike and traversing plaintiff's 200 acre tract to the Brock farm and passing through it to the Cull farm. It left the pike at the corner of the yard to the residence of Thomas Gayle and passed through some lots and upon it there were a number of gates, as there were also gates at some points in it where it traversed the Brock farm. That passway had been used by the owners and occupants of the Cull and Brock farms, and perhaps others in the neigh-

borhood north of plaintiff's land, in practically the same location as it was when this suit was filed for more than fifty years, but which use plaintiff claims was all the while permissive only; but whether so or not it is immaterial in this case, since defendant relies on the writing hereinbefore inserted.

Plaintiff, by reply, sought to avoid the effect of that writing by (1), a plea of *non est factum;* (2) undue influence exercised upon Thomas Gayle by J. C. Jones whereby the former was induced to sign it, if he did so; (3) a plea of no consideration; (4) that if mistaken in all of the above the paper was too indefinite to be enforced, and (5) that it by its terms did not create an appurtenant easement but only one in gross which terminated with the death of J. C. Jones. Proper responsive pleadings made the issues and upon submission, after extensive proof taken, the larger part of which is wholly incompetent and irrelevant, the court dismissed the petition, and to reverse that judgment plaintiff prosecutes this appeal.

There is scarcely any substantial testimony in the record supporting the plea of *non est factum,* relied on in avoidance (1). Even the plaintiff herself in giving her testimony under oath would not say that the signature of "Thomas Gayle" to the writing relied on by defendant was not made by her father. When asked the direct question by her attorney she answered: "The 'Gayle' looks natural but the 'Thomas' does not. I can't say positively whether it is or not." Her brother, English Gayle, who was perhaps her most active witness, said that "I *think* that my father did not sign the signature." He gave as his reasons for so thinking that he had compared the signature with others made by his father and he concluded there was a discrepancy between them, and that his father had frequently told him that he had not given or sold a road through his farm (which was incompetent), and because of these two reasons witness thought his father did not sign the writing. A sister of plaintiff is the only witness who says positively that her father did not sign it, but she gave no satisfactory reason for her opinion. Opposing this testimony is that of Fred Jones, a brother of defendant, who testified that he saw Thomas Gayle sign his name to the writing in contest. A number of witnesses who were familiar with the handwriting of plaintiff's father testified that from their

familiarity with it they believed the signature in question was genuine. Bank cashiers with whom Thomas Gayle did business also testified that according to their best opinion the questioned signature was made by him. Fortifying all of the above positive oral testimony the original deed, which Thomas Gayle executed to plaintiff, was filed in the case and has been brought to this court for our inspection, as has also the paper expressly granting the easement in question, and the two signatures are so similar in their construction and contour as to leave no doubt in the minds of even a layman as to such subjects that the two signatures were made by the same person. There are also some original checks signed by Thomas Gayle brought here with the record and to them, in signing his given name, he would write it "Tom" or "Thom," but the surname "Gayle" signed thereto is identical with the same name on the writing in question, and it is shown beyond dispute that Mr. Gayle, when executing any writing relating to real estate or any interest therein, would always write his given name in full, while he would abbreviate it in his signatures to other writings. We, therefore, not only have the finding of the chancellor upon this issue of fact, but we find the testimony in the record overwhelmingly supporting his conclusion thereon.

But it is said that the witness Fred Jones was an incompetent one under the provisions of 606 of the Civil Code of Practice, since he was liable on his warranty in his deed conveying his interest in the Brock farm and he was, therefore, a party in interest though not one in name and was forbidden, under the provisions of the section of the code referred to, from testifying to the execution of the grant by Thomas Gayle. This would perhaps be true if the facts assumed by plaintiff's counsel were true, but which the record shows to be otherwise. The deed executed by Fred Jones was only a quitclaim deed so far as the passway in question was concerned. It says on that subject: "This deed conveys to grantee all the right vested in grantor (Fred Jones) to use the passway now existing and used through the lands of R. C. Jones and Thomas Gayle's land." That language contains no warranty concerning the passway and Fred Jones having no interest, direct or remote, in the subject matter of the litigation he was a competent witness to prove the facts to which he testified.

In support of avoidance (2), the only testimony offered or introduced was that of a number of witnesses showing that Thomas Gayle and J. C. Jones were fast friends and almost inseparable in. their associations. Each had great confidence in the other and they consulted each other about their business transactions and affairs. This character of testimony is so wholly insufficient to establish the fact for which it was introduced that we deem it unnecessary to further consider this ground.

Avoidance (3), is equally as unsupported as is the one last considered. The writing on its face shows a sufficient consideration for its execution. Thomas Gayle was as much interested in having a passway over the Brock farm to his Cull farm, lying, as we have seen, to the north of defendant's farm, as J. C. Jones was interested in having a passway from his farm over Gayle's farm to the turnpike. The parties by the very language they employed "traded roades," Gayle giving one to Jones through his farm in consideration of the latter giving one through his farm to the former. There could scarcely be expressed a more substantial consideration.

In disposing of avoidance (4), we might assume for argument's sake (but which we are unwilling to endorse as a correct proposition under the facts in this case) that if the writing in dispute was purely executory, it would not be enforcible because of uncertainty and indefiniteness of its terms. But, long before this suit was brought, and almost immediately after the execution of the disputed writing, the parties to it located the passway across each of their farms, where it has been maintained and used constantly since that time and without objection till a short while before the filing of this suit. If the contract at the time it was executed was not enforcible because of uncertainty that defect was removed by the act of the parties which cured the uncertainty of its term by the actual location of the passway upon the ground (Bowling v. Rouse, 28 Ky. L. R. 1037), and after such location and mutual user, it does not lie in the mouth of either party, or any privy of his with notice (though for a valuable consideration) to repudiate the agreement because of its alleged indefinite and uncertain. terms. C. & O. Ry. Co. v. Richardson, 30 Ky. L. R. 426, 98 S. W. R. (Ky.) 1042.

Avoidance (5), is also easily disposed of. Easements consisting of private passways are never presumed to be

personal (or in gross) when they can be construed to be appurtenant to the land. The law favors such construction of the grant as will create a covenant running with the land. As said in the case of Hammonds v. Eads, 146 Ky. 162, ''This (a passway in gross) is never to be presumed when it can be fairly presumed to be appurtenant to some other estate; that an easement is appurtenant and not in gross when it appears that it was granted for the benefit of the grantee's land.'' See also Johns v. Davis, 76 S. W. R. (Ky.) 187 (not elsewhere reported). It appears from the face of the writing here involved that the easement therein granted was ''for the benefit of the grantee's land,'' for it says that ''said road is to bee for the use of these too farmes & no other.'' There is no doubt about the passway in question being an appurtenant one and running with the title to the lands for the benefit of which it was created, and not one in gross.

But it is insisted that though the writing may not be inoperative, for any of the reasons discussed above, it was not legally executed because it purports to convey an interest in land and it was not acknowledged according to law. It has been frequently held by this court that the statutory requirement as to the acknowledgment of deeds was primarily for the purpose of enabling the grantee to place them on record so as to give constructive notice to the world; for unless their execution be proven according to the statutory requirements they can not be recorded. But the omission of such requirements does not prevent the writing from conveying an enforcible interest as between the parties and their privies in estate with notice. 19 Corpus Juris, 907. But an heir or a gratuitous grantee who obtained their interest without the payment of a valuable consideration is bound by the unacknowledged written instrument, although he has neither actual nor constructive notice of its execution, and takes his estate encumbered with the burdens which the unacknowledged and unrecorded instrument creates. Having paid no valuable consideration such privies in estates have no intervening equities to be protected because of the absence of notice, and their rights are subordinate to prior equities though they be secret ones. This is in conformity with the rule that an heir or a gratuitous grantee takes no greater interest than was possessed by his ancestor or grantor.

Fields v. Napier, 26 Ky. L. R. 240.. The plaintiff, Mrs. Riddle, obtained her land from her father under a deed of gift from him, while defendant inherited a part of his farm and purchased his other interest in it after actual knowledge of the existence of the writing in question. Both plaintiff and defendant, therefore, are bound by its terms and they are each obligated to permit the other to use the passway for the purpose for which it was created and neither of them can close or obstruct it to the detriment of the other.

Other points are discussed, most of which are based upon wholly irrelevant issues and which are supported by equally irrelevant and incompetent testimony and none of which do we deem it necessary to consider.

Wherefore the judgment is affirmed.