## Reynolds, et al. v. Cooper.

### Same v. Same.

(Decided February 17, 1922.)

## Appeals from Boyle Circuit Court.

1. Sales—Inspection.—Where the seller by written contract agreed to accept the inspection of the staves delivered under the contract to be made by the parties to whom the purchaser might re-sell same, such agreed upon inspection when properly established will prevail over an independent inspection made by the seller before shipment in the absence of proof by the seller of fraud or mistake in the agreed upon inspection; and the mere fact alone, that the two inspections do not agree is not satisfactory or convincing proof of such fraud or mistake.

2. Contracts—Separate Actions—Consolidation—Reference to Commissioner.—Where both parties in two separate actions sought an adjustment of their complicated accounts under two independent contracts, and, in their evidence, after consolidation of the cases, included like items not covered by either contract sued on in such a way the commissioner to whom the evidence was referred could not separate such items from those covered by the contracts sued upon, the inclusion of such items in his report, even though the totals thus ascertained were in some instances

in excess of those stated in the petitions, but not as stated in the reply, does not afford reason for reversal where the debts and credits were correspondingly increased, and the net amount found to be due the plaintiff does not exceed the amount for which he asked judgment.

3.    Judgment—Pleading.—The allowance of an item not claimed by the plaintiff in his pleading was error.

JOHN W. RAWLINGS, G. E. STONE and H. C. FAULKNER for appellants.

EMMET PURYEAR and O. H. WADDLE & SONS for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming in part and reversing in part.

The two independent contracts, between the same parties, for breach of which these actions were separately brought, were in writing and provided for the sale and delivery to appellee by the appellants of approximately a million and a half of whiskey and beer barrel staves of different sizes and grades, for which appellee agreed to pay stipulated prices according to size and kind.    Both contracts provide that appellee shall make advancements to appellants and that the latter shall accept the inspections given appellee by the parties to whom he should resell the staves, it being contemplated by the parties, as was done, that the staves would be shipped by appellants, not to appellee, but upon his orders, to the parties to whom he resold them.

Appellee sought to recover in the two actions sums aggregating $8,288.67, exclusive of interest, for the advancements and payments made to appellants in excess of the amounts due for staves delivered, and $5,463.91 for lost profits resulting from appellants' failure to complete the contracts.

Appellants in each case claimed larger deliveries than allowed by appellee; denied any overpayments or loss of profits and set up a counterclaim. The issues were completed in each case by appropriate pleadings and then the cases were consolidated.

After the evidence had been taken by deposition and filed, the whole matter was referred to a special commissioner, and to his report allowing appellee a total of $5,376.35 for overpayments and $4,513.34 for lost profits under both contracts, thirty-two exceptions were filed, all of which were overruled and judgment rendered in accordance with the commissioner's report.

The record is voluminous and the accounts are very complicated, so we shall confine ourselves to the matters urged in brief for a reversal.

It is first insisted that the commissioner and court erred in accepting appellee's rather than appellants' evidence of the total number and value of the staves delivered.

Appellee proved by the parties to whom the shipments were made by appellants upon his orders, that the total number and value of all the staves delivered, according to their inspection and count, were as reported by the commissioner, while appellants proved by their secretary in active charge of the business and other employes, that according to the inspection and count made by them when the staves were loaded in the cars for shipment to these same parties their number and value were considerably larger and as appellants claim.

The controversy, therefore, hinges upon which inspection shall control, since the differences in number and value seem to be due entirely to the fact that many staves shipped by appellants were rejected or given a lower grading by the consignees than by appellants. The possibility of such a controversy arising seems to have been foreclosed by the plain and unambiguous terms of the contracts, by providing that the inspection of the consignee should control.

But it is urged the evidence by which these agreed upon inspections were established was incompetent, to which we can not agree. The original inspection slips, except a few that had been destroyed, seem to have been introduced in every instance, identified and their verity established by the inspectors who made them, or by an officer of the corporation to which the shipment was made. In the latter case it was shown that the slips were made out and signed by a competent inspector of the consignee; that he had left the employ of the consignee and was out of the state; that the inspection slips were the original entries and were made, recorded and filed in the regular course of business, and that the witness was the proper custodian of same.

In the instances where the original inspection slips were not introduced and thus identified, an officer of the consignee testified that according to its custom the slips had been preserved for a year and then destroyed, but that they were recorded in the regular course of business in the permanent records of the company which he as

custodian introduced and proved. It therefore appears that all of the inspections were established either by primary or the best available evidence.

It is true only that some of the evidence introduced along this line was incompetent as being secondary rather that primary evidence of the inspections, but it was not prejudicial, since the inspections were amply established by competent evidence.

The argument is also advanced that to construe the contract literally and make appellants abide by an inspection of the purchaser would amount to spoliation of their property; but this assumes that appellants would have to submit to an inspection that was arbitrarily made and incorrect, which is a *non sequitur,* since they could, of course avoid such an inspection by proof of error resulting from either fraud or mistake, but obviously under any construction of the contract the burden was upon them so to do, if they wished to avoid that inspection, and this they have not done.

The fact that defendants' inspectors differently graded the same staves upon their inspection proves only that one or the other but not which inspection was incorrect because of fraud or mistake, and the commissioner and trial court did not err in such circumstances in accepting the inspection provided for in the contracts.

2.   The next insistence is that the amount allowed appellee for overpayments on the first contract is in excess of the amount warranted by the pleadings; but this is not true, although at first blush apparently so.

In the suit upon the first of the two contracts appellee stated in his petition that the total advancements to appellants on that contract amounted to $21,494.91, while the amount as fixed by the commissioner is $27,427.33, but this seeming error is satisfactorily explained in the commissioner's report as follows:

"The plaintiff filed with each of his petitions as an exhibit an itemized statement purporting to be an exact statement of the account existing between the parties relative to the various contracts and the verbal alterations thereof, upon which these consolidated actions are based. Defendants also state in their answer and counterclaim what purports to be the total advancements of money made by plaintiff and the total amount of staves furnished by defendants. However, in the pleadings, exhibits and proof, for both plaintiff and defendants, there are included in the alleged advancements of money, and in

the alleged number of staves furnished, several items which have no connection with any of the contracts sued upon herein. It is impossible to separate the items which relate to said contracts from those which are not connected therewith. The plaintiff undertakes to charge the defendants with all the money he advanced them during the life of the contract sued on herein, except a certain note for the sum of $1,500.00 (should be $1,250.00) involved in the action of W. A. Reynolds, &c. v. J. S. Cooper now pending in the Boyle circuit court; likewise, the defendants undertake to charge plaintiff with all the staves furnished during the life of the contracts, regardless of whether or not the alleged money advanced, or the alleged staves supplied were connected with said contracts. Under such a condition of affairs, your commissioner is of the opinion that the only way possible to arrive at an equitable adjustment of the matters between the parties under the pleadings, proof and exhibits, is to charge against the defendants all the money advanced by plaintiffs, except the aforesaid note for $1,500.00 ($1,250.00) established by the pleadings, exhibits and proof, and to charge against the plaintiff all the staves delivered by defendants, as established by the pleadings, exhibits and proof. This seems to be the method adopted by both plaintiff and defendants, and is followed by your commissioner in this report.''

Obviously the inclusion in the evidence by both parties of items not covered by the contracts sued on made necessary their inclusion in the figures from which a balance due either party could be ascertained and increased the figures of both deliveries and payments but did not affect the net result both parties by their evidence and pleadings sought. Not only so but the balances found to be due appellee were less than the amounts for which he asked judgment, and besides the apparent error in appellee's petition as to the total advancements under the first contract is corrected in his reply rather than by an amended petition as should have been done. The appellants by their answer stated the advancements made under the first contract to be as stated by appellee, $21,494.91, but alleged they had on their yards a large quantity of staves ready for delivery. The reply, filed some time later, stated that appellants had delivered and appellee had accepted these additional staves since the answer was filed and credited appellants therewith and that the total advancements made under

that contract then amounted to $27,518.07, which was later traversed by appellants. Hence it is not even true that the advancements on the first contract as fixed by the commissioner are in excess of the amount claimed by appellee's pleadings and put in issue by appellants' pleadings.

Appellants were not prejudiced by the irregular manner in which the issue was finally made up and the correct amount of overpayments ascertained. The judgment therefore in this respect should not be disturbed.

3. The only other item to which specific objection is made is $650.00 allowed to appellee as lost profits on 50,000 whiskey staves for which the first contract provides and which the commissioner reports were not delivered. Without reference to the proof on this question, which is not clear, as there were verbal alterations of the contract substituting one kind of staves for another, it is clear that appellee did not by any pleading claim such a failure to deliver; hence this allowance was wholly unauthorized, as counsel for appellee tacitly admit since they do not combat this contention in their brief, although specifically urged to do so by the brief of opposing counsel.

Wherefore the judgment is reversed as to this $650.00 item but in all other respects it is affirmed and the costs of the appeal are apportioned one-tenth to appellee and nine-tenths to appellants.