## Buck Creek Railroad Company et.al. v. Haws.

(Decided March 6, 1934.)

**204**

WILLIAM R. McCOY, F. M. RIVINUS and HOLT & HOLT for appellants.

J. B. CLARK and A. J. KIRK for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appellee, H. Haws, sued the appellants, Buck Creek Railroad Company and Norfolk & Western Railway Company, alleging ownership of the portion of a right of way in Martin county, on which there is a railroad owned by the former and leased to the latter company. The plaintiff prayed for judgment for the strip of land, or, if that could not be had, for its value, placed at $2,000, and also asked $1,000 for damages to the land and its wrongful detention. Issues being formed upon both negative and affirmative defenses, a trial resulted in a verdict for $1,000 in favor of the plaintiff.

The railroad about 1¼ miles long was built in 1920 at a cost of about $400,000 by the Himler Coal Company from its mines at Himlerville to a bridge across Tug river connecting with the Norfolk & Western Railway Company. For about 1,000 feet it passes through a tract of 16 acres, the surface of which is now owned by the appellee, Dr. Haws. This was a portion of a large body of land, the minerals in which were acquired some

years before by the Himler Coal Company and its pre-decessor in title, the Tug River Coal & Salt Company. A detailed history of the situation will be found in Himler Coal Company v. Kirk, 205 Ky. 666, 266 S. W. 355, and Himler Coal Company v. Kirk, 224 Ky. 383, 6 S. W. (2d) 480. In 1924 the Himler Coal Company conveyed this railroad to the Buck Creek Railroad Company, and in 1925 that company leased it to the Norfolk & Western Railway Company, which has since maintained and operated it. The appellee's title has the same relation to that of the railway companies as did Kirk's. In the first of the two cases mentioned, the coal company, as owner of the railway, sought an injunction restraining Kirk from interfering with its construction and operation where it crossed his land. It was held that the coal company had the right to build the railroad as being a way of necessity for the removal of the minerals impliedly reserved by the predecessor of both parties. However, it was found that the way chosen was not one of necessity, but seemed rather to be one of convenience, and, while an injunction was granted, it was suggested that Kirk might recover damages if in constructing the railroad any of his property had been taken for which there was not a strict necessity. The second case was an appeal from a judgment for such damages, and it was affirmed.

In the case at bar, the defendants also relied upon their right under that same implied reservation of a way of necessity. The plaintiff did not plead that the particular route chosen was otherwise than necessary, so the point upon which the Kirk Case turned is not here. For the reasons given in that opinion, it must be held that the way of necessity existed over the land of the appellee. See, also, Jones on Easements, secs. 306, 313.

In this case defendants set up further a right under an express grant of record superior to plaintiff's title. Their common grantors were Lee Barrett and J. D. Barrett. We look first to the defendants' chain of title. In a compromise settlement of pending litigation, in which it appears that the administrator and heirs of Lewis Burger were claiming a lien on the Barretts' land, they, on April 11, 1906, conveyed to "Lewis Burger's heirs the exclusive rights of way to haul timber through, build railroads, tram routes, etc., to the mine and operate coal mines, together with all usual mining privileges.

and the right to move same free from damages." By deed of March 22, 1918, and subsequent ones, the Burger heirs conveyed to Hewitt, trustee, several tracts in which the rights acquired under their deed and the provision therein quoted were included. Hewitt, trustee, by deed dated October 4, 1919, conveyed the property to the Buck Creek Coal Company. On June 24, 1919, that company had granted or leased this property for a term of 50 years to the Himler Coal Company. Thus far the right of way for a railroad was general, and without any specific route designated. As stated above, the Himler Coal Company built the railroad, and in its conveyance to the Buck Creek Railroad Company, on November 24, 1924, the right of way was particularly described as being 80 feet wide. The lease of the Buck Creek Railroad Company of this railroad, including the real estate, to the Norfolk & Western Railway Company, was for a term of 50 years with the privilege of an additional 50 years. These conveyances and leases were severally recorded in due course.

The plaintiff's title began with a conveyance by the Barretts of June 18, 1909, to Jane Salmons. She conveyed it to the plaintiff on October 13, 1915. No reference is made in either deed to the easements which had been granted to the Burger heirs on April 11, 1906. The appellee would avoid the effect of this antedating start of appellant's title upon the ground that the conveyance of the Barretts to the Burger heirs of April 11, 1906, was a personal privilege and for their exclusive use, since it did not convey to them and their heirs and assigns; hence that the easement did not run with the land. He relies upon Mannin v. Adkins, 199 Ky. 241, 250 S. W. 974. There Adkins sold to Adams a tract of land, and the deed provided that Adkins should "have, use and get coal off the lands hereby conveyed [to Adams] for fuel for his own purposes or home consumption as fuel," and that Adams should have a passway through Adkins' land as an outlet from the land conveyed. It was held that the right to get coal from the property he was conveying to Adams was personal. The conclusion was rested upon the particular language, and we can see no analogy between that phase of the case and this one. However, the other grant of a passway was held to be an appurtenance which ran with the land. That is against the appellee in the construction of the Burger deed. The intention of the parties is

always the heart of a contract. For a valuable con- sideration, there was conveyed this easement and the other stipulated material and important rights. We do not conceive any purpose to confine those rights and their exercise in the Burger heirs who, it appeared, owned large adjacent mining properties. It would seem obvious that these rights were intended to be for the purpose of enabling the mining and removal of the minerals in the land, and consequently was an easement appurtenant thereto. It was granted for the benefit of the owners of the mineral property whoever they might become Whether an easement is to be considered as in gross or appurtenant may be determined by its relation and in the light of the circumstances under which the grant was made. An easement in gross is not to be presumed when it can be fairly construed to be appur- tenant and in the nature of a covenant running with the land. Johns v. Davis (Ky.) 76 S. W. 187; Hammonds v Eads, 146 Ky. 162, 142 S. W. 379; Riddle v. Jones, 191 Ky. 763, 231 S. W. 503.

Nor can we sustain the further challenge of the de- fendant's right to rely upon this conveyance upon the ground that it was not a recordable instrument, so the fact that it was recorded was not constructive notice. It clearly granted a valuable easement for the several purposes stated, and was an interest in the land un- mistakably. So its record was proper and effectual. Section 500, Kentucky Statutes.

The easement, therefore, constituted a burden upon the land over and through which it ran, and the subse- quent vendees took it with that burden. We conclude, therefore, that both by record title and as an implied way of necessity the appellants and their predecessors had a railroad right of way over the appellee's land.

The matter of location of that right of way is now settled by its establishment and use through acquies- cence, and the indefiniteness in the original grant is im- material. Chesapeake & O. Railroad Company v. Rich- ardson, 98 S. W. 1042, 30 Ky. Law Rep. 426; Lexington & Eastern Railway Company v. Hargis, 180 Ky. 636, 203 S. W. 525; Riddle v. Jones, supra; Himler Coal Com- pany v. Kirk, supra. The question arises, however, as to the width of that right of way. As noted above, the Himler Coal Company, claiming or assuming that it was 80 feet, conveyed such width in November, 1924. This

was after plaintiff acquired title to the servient surface estate so that the assumption or appropriation of a right of way of that width could not be superior to his title unless such width was contemplated or existed at the time the common grantors (the Barretts) conveyed the servient estate to plaintiff's predecessors in title.

In Fishback v. Glasgow Railway Company, 140 Ky. 155, 130 S. W. 982, 983, an adjoining landowner sued the railroad company for trespass. She alleged in substance that the company had title to a strip of land only 8 feet wide through her land. The company claimed that it owned and was occupying 66 feet. As in the case at bar, the plaintiff's chain of title back to the common grantor in that case contained no reservation or exception of a railroad right of way, although the common grantor had many years before conveyed to the railroad company's predecessor a right of way for a railroad, "as the said company, by their engineer may determine, not to exceed the usual width." There was no evidence that its engineer had determined the width of the right of way, but it was shown that the necessary and usual width of railroad rights of way in that county was 66 feet, and that the company had claimed and kept free from vegetation a strip of that width since the railroad was constructed, which was more than 30 years before. The plaintiff showed that she had pastured and cultivated the land on both sides of the track to the end of the cross-ties for the same length of time. The conclusion of the court was thus expressed:

"It is not necessary for us to pass upon the question of adverse possession. The writing executed by William Dickinson to the Barren County Railroad Company, the remote vendor of appellee, was acknowledged and recorded in the county court clerk's office long before she became the owner of the land, and she knew, or at least is presumed to have known, that Dickinson had disposed of the right of way through the land of the usual width which was necessary to the proper use and operation of the railroad. As stated, the uncontradicted testimony is to the effect that the width of the strip claimed by appellee and which is in dispute was and is proper for the purpose stated. Therefore the lower court committed no error in dismissing appellant's petition, and the judgment is affirmed."

Other cases involving indefinite conveyances of rail-

road rights of way are: Maysville & Big Sandy Railroad Company v. Ball, 108 Ky. 241, 56 S. W. 188, 21 Ky. Law Rep. 1693; Chesapeake & O. Railway Company v. May, 157 Ky. 708, 163 S. W. 1112; Illinois Cent. R. Co. v. Taylor, 164 Ky. 150, 175 S. W. 26, on rehearing 165 Ky. 503, 177 S. W. 293; Illinois Cent. Railroad Company v. Taylor, 183 Ky. 203, 209 S. W. 48; Citizens' Telephone Company v. C., N. O. & T. P. Railway Company, 193 Ky. 399, 233 S. W. 901, 18 A. L. R. 615; Justice v. Justice, 239 Ky. 155, 39 S. W. (2d) 250.

It is elementary that the use of an easement must be as reasonable and as little burdensome to the servient estate as the nature of the easement and its purpose will permit. Kentucky & West Virginia Power Company v. Elkhorn City Land Company, 212 Ky. 624, 279 S. W. 1082. It is provided by section 815 of the Statutes that the owner of mining property located within 3 miles of a navigable stream or a railroad may, for purposes of transportation to and from the mine, construct and operate a line of railroad and may condemn "such land as may be necessary, not exceeding fifty feet in width for each track necessarily constructed." We are of opinion that, in the absence of a definite stipulation in an express grant or relinquishment, or in a way of necessity, a right of way of such width as is reasonably necessary for the construction and maintenance of the railroad and its convenient operation was contemplated, and that this statute is the criterion of reasonableness. There is no evidence that an 80-foot right of way through plaintiff's land was necessary. If in fact more than 50 feet was taken or trespassed upon without right as thus fixed, then the defendants are liable on that account. The plaintiff is entitled to recover the excess land or its value, as may be determined by the circumstances and conditions, and for such damages thereto as he has sustained by reason of the trespasses to the extent that his right is not barred by the statute of limitation.

It is submitted that the plea of 5-year statute of limitation bars the plaintiff of all right of recovery. Section 2515, Statutes, provides in part that "* * * an action for trespass on real or personal property; an action for the profits of or damages for withholding real or personal property * * * shall be commenced within five years next after the cause of action accrued." This statute is applicable to so much of the suit as claimed damages for trespass outside the reasonably

necessary right of way as decided herein. Chicago, St. L. & N. O. Railroad Company v. Hicks, 249 Ky. 578, 61 S. W. (2d) 37. But this action was in the main for the recovery of land or, alternatively, for its value, and that branch of the case is controlled by section 2505, Statutes, establishing 15 years as the period of limitations in such cases.

The defendants relied upon an estoppel. The plaintiff was living close to his land, and knew all about the railroad across it. It is argued that he stood by and let the right of way be taken without making objection, and therefore, under the authority of Halbert v. Maysville, etc., Railroad Company, 98 Ky. 661, 33 S. W. 1121, 1122, 17 Ky. Law Rep. 1225, he is estopped to question the taking of the land. We do not construe that opinion as do appellants. In 1854 the railroad company purchased and paid for a right of way across a certain farm, and proceeded to grade the roadbed. Then the entire construction was suspended for want of funds. In 1856 Halbert bought the farm with this partially completed railroad on it, and seems to have cultivated or used part of it in connection with his farm. In 1871 progress was made towards completing other portions of the railroad, but only the lines were retraced across this land. Halbert continued as an active promoter of the road, and was closely associated with the officers of the company. He never intimated any claim of title to the strip across his land. After his death, the railroad was completed in 1886, with the knowledge and acquiescence of Halbert's devisees. Later they sued for damages. It was held that the possession of the Halberts was not adverse, and their claim to damages was denied. In concluding the opinion, it is said:

"Where an owner, who has never received compensation for the use of his land, acquiesces in the construction of a railway over it, he is estopped from recovering the land, but may recover damages. But where a mere claimant under an adverse holding, whose grantor has been compensated for the land, so acquiesces, and knowingly permits the purchaser and legal title holder—the company—to re-enter and erect costly improvements, this acquiescence must be treated as an abandonment of the adverse claim in favor of the real owner. Such conduct would be inconsistent with the claim, and be misleading to the entering owner.

"In no aspect of the case, therefore, do we find the trial court in error, and the judgment is affirmed."

We do not think the plea of estoppel is applicable to the plaintiff's claim as to the excess width of the right of way, although the conditions may be such as to estop him from recovering the land itself. The matter of adverse possession is not involved here, for it was not until 1924, or less than 15 years before the commencement of the suit, that there was any claim to an 80-foot right of way. Under the Halbert Case, as we construe it in its applicability, if the excess beyond what was reasonably necessary for the defendants' railroad as herein determined has been actually taken and occupied with costly improvements with the plaintiff's acquiescence, to that extent he has the right to recover the value only and is estopped from recovering the land itself. It cannot be said that he or his predecessors received the compensation for such excess. There is nothing apparent in this record that estops the plaintiff from recovering either the excess strips or their value as the case may be, and for trespass thereon. Louisville, St. L. & T. Railroad Company v. Stephens, 14 Ky. Law Rep. 919; Louisville, St. L. & T. R. Co. v. Liebfried, 92 Ky. 407, 17 S. W. 870, 13 Ky. Law Rep. 645; Louisville & N. R. Co. v. Walton, 67 S. W. 988, 24 Ky. Law Rep. 9; Koch v. Kentucky & I. Railroad & Bridge Company, 80 S. W. 1133, 26 Ky. Law Rep. 216; Casteel v. Pennington, 228 Ky. 206, 14 S. W. (2d) 753.

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.