(55 App. Div. 128.)

## NEW YORK CARBONIC ACID GAS CO. v. GEYSER NATURAL CARBONIC ACID GAS CO.

(Supreme Court, Appellate Division, Third Department. November 14, 1900.)

RIGHT OF WAY—TEMPORARY INJUNCTION.

An injunction securing to plaintiff the right to lay and maintain its gas pipes over the route it has selected should not be granted till after final hearing; W. having conveyed lands, without any right of way, to H., under whom plaintiff claims, and having thereafter conveyed adjacent lands to defendant, "subject to a right of way" to H. "over the Broken road, as it now exists, to and from the lands conveyed to" H. by W., and having subsequently made a deed to H. reciting the prior conveyance of premises to H. which were 25 feet distant from the bridge across C. creek, and that it was his intention to convey to H. a right of way across his remaining lands to and over the Broken road, connecting with C. avenue, and that he had conveyed such adjacent lands to C., subject to said right of way to H., and then proceeding to grant to H. the right of way "over the space between said lands, the bridge, and Broken road, and to and over said road to said C. avenue," and the route selected by plaintiff to the road not being by said nearest way, of 25 feet, but a way running 300 feet over defendant's lands before reaching the road, and not continuing along said road to C. avenue, but, after proceeding along the road a certain distance, leaving it and passing back over defendant's land to plaintiff's lands.

Appeal from special term, Saratoga county.

Action by the New York Carbonic Acid Gas Company against the Geyser Natural Carbonic Acid Gas Company. From an order granting plaintiff an injunction before final judgment, defendant appeals. Reversed.

The following is a copy of the plat referred to in the opinion:

MAP
OF PROPERTY OF
GEYSERS NATURAL CARBONIC ACID GAS CO,
AT
"THE GEYSERS."

In October, 1889, one Wiswall, being the owner of an 100-acre farm near Saratoga Springs, conveyed a portion of it to Emily H. and Frank H. Hathorn. In that conveyance no right of way was given over the grantor's adjacent lands. Subsequently he conveyed different parcels of the farm to different grantees, and finally, in January, 1893, he conveyed all the remainder to L. B. Cole and others. Part of the parcel so conveyed to them was adjacent to the parcel conveyed to the Hathorns, and upon it, running north and south nearly its whole length, was a road called "Broken Road," which led from Coesa avenue, on the north, to a bridge crossing Coesa creek at the southerly end of the tract. In this deed to Cole the following phrase was inserted: "Subject, also, to a right of way to Emily H. and Frank H. Hathorn, their heirs and assigns," etc., "over the Broken road, as it now exists, to and from the lands conveyed to them by said Wiswall by deed dated October 12, 1889, and recorded," etc. This Broken road did not anywhere touch the premises conveyed to the Hathorns. Its nearest point was at its south end, where it entered upon the bridge. There it was about 25 feet from the Hathorn line. Subsequently, and on April 1, 1896, Wiswall executed to the Hathorns a conveyance in which he, in substance, recited that on October 12, 1889, he had conveyed to them certain premises therein described, and which were about 25 feet distant from the bridge across Coesa creek, and that it was his intention to convey to them a right of way across his remaining lands to and over the Broken road, connecting with Coesa avenue, and also further recited that he had conveyed such adjacent lands to L. B. Cole and others, by the deed of January 10, 1893, subject to said right of way to said Hathorns; and then such conveyance proceeded as follows: "Now, therefore, in consideration of one dollar to me paid, I hereby grant and convey to the said Emily H. Hathorn and Frank H. Hathorn the said right of way over said lands described in said deed to them over the space between said lands, the bridge, and Broken road, and to and over said road to said Coesa avenue." The Hathorns subsequently conveyed such premises to this plaintiff, and Cole and others in March, 1895, conveyed the premises so conveyed to them to the defendant, with the same provision that it was subject to the Hathorn right of way. In 1899 a well was sunk upon the Hathorn premises, and large quantities of carbonic acid gas are produced therefrom. This was the first and only well upon them. Subsequently the plaintiff, claiming that it had, by the conveyance above mentioned, acquired a right of way over the adjacent premises to the Broken road, and along and upon it, and that such right authorized it to lay pipes for the carrying of gas along such way, notified the defendant that, because it had not located the way from plaintiff's land to the Broken road, it (the plaintiff) had located the route; and it thereupon proceeded to lay down pipes over such route. The route so located by plaintiff extended from the plaintiff's spring, some 300 or more feet over defendant's land, to the Broken road, and thence along it about the same distance to a parcel of land adjacent to such road, owned by the plaintiff, and on which it had erected works for compressing such gas and fitting it for market. The defendant denied that the plaintiff had acquired, as against it, any right of way whatever by the deed aforesaid. It also denied the plaintiff's right to lay down pipes, even if it had acquired such a right, and it also denied that it had any right over the route located by it. It also threatened to tear up the pipes, if laid. The plaintiff thereupon began this action to have the right of way over the route so adopted by it fixed and established, and for a permanent injunction against the defendant's ever interfering with the pipes laid therein. An injunction order was obtained from a judge of this court, and issued with the summons, and subsequently, on notice, and after a hearing upon the answer and opposing papers, a special-term order was obtained, enjoining the defendant from interfering with such pipes as were or should be thereafter laid. From such last order this appeal is taken.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

James W. Verbeck, for appellant.
Edgar T. Brackett, for respondent.

PARKER, P. J.    The pipe which the defendant threatens to dis-
connect or tear up had never been used by the plaintiff.    It was
being put down when this action was commenced, and the purpose
of the action is to determine whether the plaintiff has the right to
lay and maintain it over the route claimed by it.    Requiring the
plaintiff to wait until final judgment determines such right would
not in the least tend to render such judgment ineffectual.    It would,
at most, deprive it of a use to which it may appear it is entitled.
But if, upon final judgment, it should appear that plaintiff is not
entitled to so use this route, such an order would have authorized
it to maintain during the pendency of the action a trespass upon
the defendant's land.    Under such circumstances, final judgment
should not be anticipated by an order authorizing the plaintiff to
so appropriate such route, unless, upon the facts presented, it fairly
appears that it has the right to do so.    Greanelle v. Association
(Sup.) 35 N. Y. Supp. 796; Finger v. City of Kingston (Sup.) 9 N.
Y. Supp. 176.    Upon the facts as they appear in the record before
us, it is by no means clear that the plaintiff has that right.    On
the contrary, it would rather seem that it is not entitled to appro-
priate the route claimed to the laying down of its pipes.    The only
claim that it makes to a right of way over the defendant's land, and
along the Broken road mentioned, is through the conveyance made
by Wiswall to the Hathorns in April, 1896.    It is claimed that by
such deed a right of way is given, but that this deed does not as-
sume to locate it over any specified route, and that, because the
defendant has refused to designate a route, the plaintiff is justi-
fied in designating the route claimed in the complaint herein.    But,
in my judgment, the language in that conveyance clearly indicates
an intent to locate such right of way at the corner where such
lands come to within about 25 feet of the Broken road.    Such road
leads on to the bridge across the 'Coesa creek, and the conveyance
first recites that the premises which had been conveyed to the
Hathorns by the prior deed of October 12, 1889, were about 25 feet
distant from such bridge.    It then proceeds to convey to them a
right of way "over the space between such lands, the bridge, and
Broken road, and to and over said road to Coesa avenue."    The
"space" there referred to is clearly the strip of adjacent land be-
tween the Hathorn line and the Broken road as it enters upon the
bridge, being about 25 feet in width.    A glance at the map used by
defendant upon this motion makes the construction plain.    At that
point a road 25 feet long would connect the Broken road with the
Hathorns' land, and enable them to drive from their premises onto
the Broken road, and thence along it to the public highway known
as "Coesa Avenue."    Such Broken road was a farm road, long es-
tablished, and used for the benefit of the farm, and the driving
over which would cause no injury or inconvenience to the rest of
Wiswall's premises.    By the crossing of this narrow strip of 25
feet, a right of way was thus secured from the Hathorn lot to the
public highway, and I have no doubt that such was the location
which Wiswall intended by the conveyance in question.    Moreover,
it is averred in the answer, and must, I think, be taken as one of

the facts in the case, that this plaintiff has in fact heretofore used that route as its way to and from such lot. It put a pair of bars in the line fence there, and reached the Broken road over this 25 foot "space." Thus the use of the way by the parties themselves gives construction to the grant as I now construe it. The route of the right of way which the plaintiff seeks to establish by this action is an entirely different one. It starts from a point in the Hathorn line much further north and east of the "space" referred to, and leads northerly upon defendant's premises, and nearly parallel with the Broken road, some 200 or 300 feet before it intersects such road. Then it proceeds along such road about the same distance. Then it leaves the road at the westerly side of it, and crosses lands of the defendant, over which it concededly has no right of way, to its own lot, on which its works are located. A glance at the map used will show the situation much clearer than it can be stated, and makes plain how thoroughly the route claimed differs from the one heretofore used by the parties, and which, in my judgment, is intended by the deed. It must be borne in mind that the plaintiff has but one right of way under the deed in question. It cannot have one road for men and teams, and another over which to lay pipes for the transportation of gas. If the route over which it claims to lay the pipes in question is the plaintiff's at all, it is its to drive and travel over. It may open up a roadway of reasonable width over that route, and it can have no other. But suppose that the deed does not at all define the route of the right of way given, and that plaintiff is not at all hampered with it, in locating that route is it entitled to appropriate the one which it has taken? In my judgment, it is not. In selecting a route, reasonable regard for the interests and convenience of the defendant must be had. 19 Am. & Eng. Enc. Law, 106. And, surely, when the Broken road can be reached by passing over a "space" of 25 feet only, a route which runs over the defendant's land for 200 or 300 feet parallel to that road before entering it cannot be deemed as at all considerate of defendant's interests or convenience. As bearing upon this question, the language of the reservation, if it be deemed such, in the deed to Cole and others, must be considered. The right of way reserved is "over the Broken road, as it now exists." No reservation is made of a right of way to the Broken road, but only of one along and upon it. At least, the language used does not reserve any, and Cole might claim that by strict right the Hathorns must acquire from him the right of way to such road. But concede that access to the road, as well as a right of way over it, was intended; then surely the reservation must be construed strictly in favor of Cole, and the burden which is thus imposed upon the lands so granted to him must not be enlarged beyond that which will do him the least possible injury, and at the same time afford a reasonable right of access and egress to the Hathorns. And it would seem that Wiswall had this in mind when he referred to the "space" of 25 feet in width over which the right of way was granted. And so, also, should the Hathorns and their grantees be held to a large consideration for the interests and convenience of Cole and his

grantees, when they claim by force of such reservation to fix a route across their lands for a right of way to such Broken road.

I am of the opinion that an injunction which secures to the plaintiff the right to lay and maintain its pipes over the route it has selected should not be granted until, after full investigation and consideration of all the facts, a final judgment decrees that it is justly entitled to it. In reaching this conclusion, I have not considered the question whether a right of way given as this is claimed to have been given carries with it the right to lay and maintain pipes over whatever route may be fixed for the same, nor whether the conveyance to the Hathorns of April, 1896, conveyed any right of way which is operative as against Cole and his grantees. Those are questions by no means free from doubt, but it seems unnecessary to now decide the same, since, for the reasons above given, I conclude that the order appealed from should not have been granted, and must be reversed.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.