| **Serth v Segrue** |
|:---:|
| 2026 NY Slip Op 30069(U) |
| January 26, 2026 |
| Supreme Court, Schenectady County |
| Docket Number: Index No. 2021-1998 |
| Judge: Michael R. Cuevas |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

ORDER

2021-1998
01/27/2026 01:07:58 PM
Receipt # 2026080330
23 Pages

Cara M. Ackerley, County Clerk          Clerk: LD

PRESENT:   HON.  MICHAEL R. CUEVAS
           JUSTICE OF THE SUPREME COURT

STATE OF NEW YORK                        SUPREME COURT
COUNTY OF SCHENECTADY

---

JOSEPH SERTH and                         **DECISION & ORDER**
CHRISTINE SERTH,

                          Plaintiff,     Index No.: 2021-1998

          -against-

JAMES M. SEGRUE,

                          Defendant.

---

**APPEARANCES:**

Joseph Serth and Christine Serth, *Pro Se*

Andrew J. Healey, Frank M. Putorti, Jr.., P.C., Attorneys for James M. Segrue

**MICHAEL R. CUEVAS, J.**

Plaintiffs Joseph and Christine Serth (Joseph Serth as "Serth" or Joseph and Christine Serth as "Serths" or "Plaintiffs") instituted this action against Defendant James M. Segrue ("Segrue" or "Defendant") by the filing of a Summons with Notice and Verified Complaint. The Complaint asserts three causes of action: (1) for breach of an "Agreement Concerning Easements" dated December 6, 2019; (2) for violation of a right-of-way to the lands formerly of Martin and now owned by Serth, with a request for monetary damages of $250.00 for every day that their access was blocked; and (3) for a judgment declaring that the Serths have an express right of way over the lands of Defendant to the lands formerly of Martin.

Segrue filed answer on October 18, 2021 asserting twelve affirmative defenses: failure to state a cause of action; plaintiffs are not entitled to any relief; plaintiffs' claims are barred by documentary evidence; plaintiffs have breached the Agreement Concerning Easements; plaintiffs' claims are barred by laches, unclean hands, equitable estoppel and/or collateral estoppel; failure to attach all referenced documents to the Complaint; defendant has complied with all terms of the

1

Agreement Regarding Easements; plaintiffs' requests for relief exceed the scope of existing easements; plaintiffs have exceeded the scope of the easements, causing damage to defendant's property; plaintiffs have failed to mitigate damages; plaintiffs' damages were caused by their own culpable conduct; and the action is frivolous . A trial was held on June 21, 2023, June 27, 2023; July 10, 2023, and September 2, 2023. Joseph Serth and Christine Serth appeared *pro se* and James Segrue was represented by Andrew J. Healey, Frank Putorti, Jr., P.C. Christine Serth's appearance at trial was excused on consent of the parties.

Kevin Weed, who is employed by Gilbert VanGuilder Land Surveyor, PLLC as a licensed land surveyor [1] and Joseph Serth testified on behalf of the Serths, and James Segrue testified on his own behalf. This Court finds: (1) that the evidence adduced at trial does not prove that James Segrue violated the Agreement Concerning Easements dated December 6, 2019 as alleged in the Serths' first cause of action; (2) that the Serths met their burden of proof establishing that James Segrue violated the right(s) of way to the "Martin" lot; (3) that Plaintiffs' failure to establish the precise location of any express easement that exists for the benefit of the former Martin lot through the lands formerly of Morgan does not preclude the finding of an easement; (4) that the request for equitable relief entitling the Serths to clear any obstructions on the full width of the right-of-way and allowing them to construct a two-lane road for-two way traffic with ten feet of adjacent land cleared on each side in the right-of-way is not warranted; and (5) monetary and punitive damages are not supported by the evidence.

## STATEMENT OF FACTS

The facts here are largely undisputed. Joseph Serth owns two parcels of land (one individually, the other with his wife) adjacent to parcels owned by Segrue in the Mariaville Lake area of Pattersonville, New York. Segrue's lands include, but are not limited to: 274 Batter Street (referred to as Lot #3 or S/B/L 35.05-1-22), a 17.3 acre lot (also referred to as the 21.5 acre lot or

---

[1] *June 21, 2023, p. 14-15.*

2

S/B/L 35.05-1-1.1), and a 3 acre lot (referred to as the former Morgan lot or S/B/L 35.05-1-1.2).[2] Serth's parcel, owned by him and his wife, is referred to as the old Courtright Lot or S/B/L 35.05-1-26, and the other owned solely by him is referred to as the old Martin lot or S/B/L 35.05-1-27.[3] Shortly after Serth and his wife purchased the old "Courtright" lot, Segrue sued them seeking $450,000.[4] This litigation resulted in the aforementioned Agreement Concerning Easements ("Agreement"), dated December 6, 2019, which Serth now claims Segrue has violated.[5] The Agreement acknowledges that the Serths have a 50 foot by 80 foot easement ( hereinafter "Easement 1)" over the lands formerly of LaPan[6] and a twenty (20) foot right-of-way (hereafter "Easement 2") over the lands formerly of Handy.[7][8]

A.    **DECEMBER 6, 2019 AGREEMENT**

The Agreement acknowledges that "there is a Right of Way Agreement dated February 10, 1993 between Edward F. LaPan, Jr., and William H. Courtright…which specifically delineates a metes and bounds description of a 50 foot by 80 foot easement for ingress and egress over the lands of Edward F. LaPan., Jr., to William H. Courtright, his heirs, successor and assigns ("Easement 1")."[9] The easement now provides the Serths, as Courtright's successors and assigns,

---

[2] *6/27/23, 81-83 ( Segrue purchased 274 Batter and the 17.3-acre lot in 1997, the 17.3-acre lot was transferred to his daughter and then back to him and then he obtained the Morgan lot around 2010).*

[3] *June 21, 2023, p. 119-121; 6/27/23, 14-15.*

[4] *June 21, 2023, p. 119-121.*

[5] *June 21, 2023, p. 119-121; Ex. A.*

[6] S/B/L 35.05-1-1.1

[7] S/B/L 35.05-1-1.1. Handy (Segrue's daughter) re-conveyed to Segrue the lands of LaPan that Segrue had previously conveyed to Handy.

[8] *June 21, 2023, p. 41-43.*

[9] *Exs A, D, E, I.* There are several deeds referenced in the Agreement: (1) 11/19/69- from Iovino to Regeles, not in evidence; (2) 2/10/93 from LaPan to Courtright, which was received as Exhibit E; (3) 12/12/97 from LaPan to Segrue, which is not in evidence; (4) 12/5/05 from Handy to Segrue, which was received as Exhibit I; (5) 7/22/15 from Courtright to Serth, which was received into evidence as Exhibit D.

Exs. D, AA: The Deed from Courtright to the Serths indicates that it has the benefit of two separate easements. The first is to "share the use of a certain twenty (20) foot right of way, jointly with the others….for all purpose of ingress and egress, said right of way being located on the Westerly side of Lot No. 2 on "Map of Property Belonging to the Estate of William Stuart Gahagen at Mariaville Lake…." The second, is for "the use of a certain fifty (50) foot right of way, said right of way being located across Batter Street and opposite the front of Lot No. 3, said right of way extending to Mariaville Lake. The deed identifies that the easements were conveyed to the Courtrights by deed from William Courtright dated 6/15/89.

3

with an easement for all purposes of ingress and egress over the Segrue property that Segrue received from Alexis M. Handy. [10] The parties also agreed that the twenty foot right of way for ingress and egress is located on the lands of Segrue that he received from Edward F. LaPan, Jr., ("Lot 3") and "shall be delineated and defined as including the entire eight (8) foot wide, paved driveway with an additional twelve (12) feet on the westerly side of the paved driveway (the left side of the driveway when looking up the driveway from Batter Street). [11] The parties agreed that either of them can snowplow the easement area, subject to certain restrictions. [12] Segrue was also responsible for ensuring that any trees or vegetation on the easement or easterly side of the twenty (20) foot right of way shall be maintained and trimmed so that there is no interference with safe pedestrian and motor vehicle movements. [13] The trees and vegetation were to be trimmed so that no branches overhang the easements at a height less than twelve (12) feet off the ground.[14] Serth is to provide written notice if the vegetation needs to be cut back. [15] Serth alleges Segrue has violated the Agreement because he has not cut tree limbs on various sections of the property and

---

Ex. E: The Right of Way Agreement from LaPan to Courtright dated 2/10/93: granted a perpetual easement for all purposes of ingress and egress "along the common bounds of Courtright and Lapan…a distance of 50.0 feet to a point; thence through the lands of Lapan…a distance of 80.0 feet to a point…west a distance of 50.0 feet to a point in the northerly bound of Lot 3…thence along the northerly bounds of Lot 3 and Lot 4…west a distance of 80.0 feet to the point of beginning.

Ex. I: 12/5/05 Deed from Handy to Segrue: "Further subject to the right of Keith Morgan, his heirs, successors, and assigns to share the use of a right of way for ingress and egress, running along the easterly side of the lands of Courtright and the lands conveyed to Keith Morgan by deed dated August 1992…said right of way being a minimum of 80 feet wide."

"Together with the right to the grantee herein, her heirs, success and assigns to share the use of a right-of-way for ingress and egress, being 80 feet wide, and running along the westerly side of the lands of LaPan…being Lot 3."

*June 21, 2023, p. 29-31; June 21, 2023, p. 54-56.*
[10] *Exhibit A.*
[11] *Exhibit A.*
[12] *Exhibit A.*
[13] *Exhibit A; See photographs N, O, P, Q.*
[14] *Exhibit A*
[15] *Exhibit A*

has prevented snowplowing by blocking the road.[16] Segrue testified that he trims the trees 3 or 4 times a year. [17]

Per the Agreement, Serth has the ability to mow the grass on the easterly side of the twenty (20) foot right of way to maintain safe access over the right of way and is allowed to mow one (1) mower width immediately next to the eight (8) foot wide paved driveway on the easterly side (mowers with a width of approximately sixty (60) inches). [18] Segrue testified that Serth cut a path across the Lands formerly of Morgan (now Segrue) with his lawnmower that was 4 feet wide.[19] Segrue claims he did not have permission to do this. [20]

Segrue asserts that under the Agreement he can park on part of the right-of-way, as does Serth. [21] Serth testified that he received complaints and threats regarding two vehicles (including an unregistered jet ski and unlicensed trailer) that he parked on the easement (the police report in evidence demonstrate that these vehicles were parked on the old Martin [now Serth lot). [22] Serth noticed that at the time of the complaints, the trailer tires were slashed and deflated (a total of 12). [23] He also later noticed that his jet ski engine was filled with animal feces and that the spark plugs of the engines were broken. [24] Serth testified that he has no personal knowledge of who caused the damage.[25]

Serth admitted that he has always had the ability to access the Courtright (now Segrue) lot by pedestrian or motor vehicle traffic, but only in one direction. [26]

---

[16] 6/27/23, 15, 18; June 21, 2023, p. 119-131; Exs. No, O, P.
[17] *6/27/23, 99.*
[18] *Exhibit A*
[19] Ex. Y.
[20] *6/27/23, 100-101; July 10, 2023, 61.*
[21] *June 21, 2023, p. 119-121.*
[22] *June 21, 2023, p. 119-121, 140-141; Exs. S, U, V.* The old Martin Lot easement is for ingress and egress; there is no language addressing vehicles to be parked in that area.
[23] *June 21, 2023, p. 143.*
[24] *June 21, 2023, p. 143.*
[25] *6/27/23, 23.*
[26] *6/27/23, 20-21.* The Audi depicted in Exhibit P was not parked, it was merely running while Serth ran inside. *6/27/23, 100-101.*

Segrue testified that Exhibit A references a right-of-way over Lot 3.[27] Segrue indicated that there is a dispute over where the right-of-way ends with regard to the driveway that he put in.[28] He detailed that the driveway starts at Batter Street, where Serth would turn into the driveway and that the right of way goes the length of the driveway up over Lot No. 3 where it turns at the 21.5 acre lot over to the old Courtright Lot.[29] This would be the entire length of the right-of-way.[30] Serth claims that the right-of way, extends north on the 21.5-acre lot for the entire length of the old Courtright lot up to the old French drain at the old Morgan property, as shown on the survey of Gilbert VanGuilder dated July 12, 2021. *Exhibit B.*

## B. EASEMENTS OTHER THAN STATED IN THE AGREEMENT

Segrue testified that there are two easements on his property identified in the Agreement and the another affecting his "Morgan" lot.[31] The lands formerly of Morgan (now owned by Segrue)[32] is a 3 acre parcel immediately to the north of the former lands of Martin (now owned by Serth), also identified as 280 Batter Street.[33] By a deed recorded July 9, 1974, from Clarence and Madeline Regeles to Edward A. and Delores Martin, in Book 980 of Deeds at page 439, the Martins were granted a right-of-way for ingress and egress across the lands of Regeles, known as Lot 3 on the Map of property belonging to the Estate of William Stuart Gahagan made by S.J. Costello and filed in the Schenectady County Clerk's Office on June 24, 1935.[34] The metes and bounds description of the property conveyed by the Regeles to the Martins describes the property now owned by Serth (S/B/L 35.05-1-27). The deed by which Serth acquired title, Jennifer Lynn DiCaprio and Angelo G. DiCaprio to Joseph P. Serth, filed January 26, 2021, in addition to the metes and bounds description contains the following:

---

[27] *July 10, 2023, 45.*

[28] July 10, 2023, 46.

[29] July 10, 2023, 46-48.

[30] *July 10, 2023, 47-48.*

[31] *July 10, 2023, 11; June 21, 2023, p. 49-50.*

[32] Ex. G, Deed: Morgan to Segrue, dated October 18, 2011

[33] *June 21, 2023, p. 47-48; Exhibits B, M. G; June 21, 2023, p. 50-54.*

[34] The Costello survey was not admitted into evidence, but it would not be instructive as it does not show the easement referenced in the Regeles to Martin deed.

[* 6]

Together with a right of way for ingress and egress to the above described parcel herein conveyed running from the north side of Lot No. 3 through the lands belonging formerly to Regeles (Schenectady County Clerk Book 788 Page 68, Kalteaux to Regeles, filed August 28, 1959), now of Segrue (Schenectady County Clerk Book 1526 page 345, Fariello to Segrue, filed October 31, 1997) and lands formerly of Morgan (Schenectady County Clerk Book 1851 Page 940, filed March 7, 2012), now of Segrue, contiguous with the right of way for ingress and egress to the above described premises herein conveyed over lands belonging formerly to Regeles, now of Segrue (Schenectady County Clerk Book 1529 at page 145, LaPan to Segrue, filed December 19, 1997) and known and distinguished as Lot No. 3 on Map of property belonging to the Estate of William Stuart Gahagan at Mariaville Lake, Schenectady County, made by S.J. Costello, Lic. Prof. Engineer dated June 20, 1935, and filed in the Schenectady County Clerk's Office on June 24, 1935.

The deed from Fariello to Segrue conveys what had been the lands of Edward F. LaPan, Jr. and conveyed to Fariello (LaPan to Fariello filed March 5, 1993 in Book 1372 of Deeds at Page 123) consisting of 21.5 acres less portions previously conveyed.[35] Notably, among the parcels excepted from the conveyance to Segrue was the parcel conveyed to Keith Morgan (filed August 24, 1992 in Book 1352 of Deeds at page 145), the so-called "Morgan" lot and another conveyed by Regeles to Martin (filed July 8, 1974 in Book 980 of Deeds at page 439), the so-called "Martin" lot. The Fariello deed notes that the conveyance was:

1. Subject to a right of way for ingress and egress granted to Edward A. Martin, Jr. and Dolores A. Martin in Book 980 of Deeds at page 439, location and width being undefined.

2. Further subject to the right of Keith Morgan, his heirs, successors and assigns, to share the use of a right of way for ingress and egress, running along the easterly side of the lands of Courtright and the lands conveyed to Keith Morgan by deed filed August 24, 1992 in Book 1352 of Deeds at page 145, said right of way being a minimum of 50 feet wide.

The second easement referenced in the Fariello deed establishes a 50-foot easement in the location of Easement 1 but for the full length of the easterly boundary of the Courtright lot and the easterly boundary of the Morgan lot. The Fariello deed also grants a shared use of the right-of-

---

[35] From the deed from Alexis M. Handy to James M. Segrue (filed May 18, 2006, in Book of Deeds 1734 at page 167), it appears that Segrue had conveyed this property to Handy (filed June 22, 1999, in Book of Deeds 1558 at Page 539) and Handy re-conveyed the premises to Segrue. The description of the premises, exceptions and easements contained in Schedule A are identical to those in the deed from Fariello to Segrue.

way across the westerly side of Lot 3, which was then the lands of LaPan. The Court notes that without Easements 1 and 2, the "Morgan" lot would have been landlocked, without access to Batter Street.

The deed from Keith Morgan to James M. Segrue (filed March 7, 2012 at Book1851, Page 940, S/B/L 35.05-1-1.2) identifies the parcel of land as "being along the westerly side of an ingress-egress easement off Batter Street", with a metes and bounds description starting at the northeast corner of the lands of Courtright, proceeding west, then north, then east and then, south "a distance of 200.00 feet along the westerly side of an ingress-egress easement to a point, being the point or place of beginning". The clear implication being that the ingress-egress easement from Batter Street continued the full length of the easterly side of the "Morgan" lot. The deed also notes that the conveyance is subject to "a right of way for ingress and egress granted to Edward A. Martin, Jr. and Dolores A. Martin in Book 980 of Deeds at Page 439, location and width being undefined." Since Fariello could not convey an easement across the Courtright parcel (at the time of this conveyance already owned by Courtright), which is to the east of the Martin parcel, Fariello must have intended to grant Martin access across the Morgan lot so that Martin would not be landlocked and would have access to the easement to Batter Street. Serth's expert, Kevin H. Weed, a professional licensed land surveyor, came to a similar conclusion after reading the various deeds in evidence and after reviewing prior surveys of the area. Accordingly, Weed notes on the survey he prepared for Serth[36] that the "Right of way for ingress and egress granted to Edward A. Martin in Book 980 of Deeds at Page 439. Not protractible."[37]

A historic aerial photograph from 1968 appears to show use of a path in the general location of the Morgan lot where the right-of-way across is alleged to have been located. [38] Weed testified

---

[36] Plaintiff's Ex. B; Survey Lands of Serth, Gilbert VanGuilder Land Surveyor, PLLC, July 1, 2021.
[37] *June 21, 2023, p. 49, 75-79; June 21, 2023, p. 75-79, Ex. G (*Not protractible means that the description of a right-of-way is so vague that it cannot be mapped, so the surveyor just notes it as "[i]t exists somewhere in this general location, but we're not able to physically plot it on the map"); Ex. B. On the Blackstone survey there was a note indicating that in the general area of the Morgan parcel there was a right-of-way for access to the Martin lot over the Morgan lot for the benefit of the Martin property. *June 21, 2023, p. 68-69.*
[38] *June 21, 2023, p. 110-111.*

8

after his field visit that there's no longer evidence of any right-of-way as the brush is now overgrown.[39] Weed testified that the right of ingress and egress went over what is Lot No. 3, now owned by James Segrue. [40]

Immediately to the right (east) of the Morgan and Courtright lots, and above Lot No. 3 (on Exhibit B, Survey of the Lands of Serth), is the parcel of land that is the 21.5-acre land owned by Segrue (also referred to as the 17.3-acre lot). [41] Segrue previously accessed the 21.5-acre lot *via* a small area in front of Gary Courtright's house that Courtright had cleared into a narrow trail that used to be an apple orchard.[42] At some point the Orchard became inoperable and overgrown. [43]

There is a 50-foot easement in use by Segrue to access his property, that is the former Morgan lot. [44] This is where Morgan used to access his land across Segrue's 21.5-acre parcel. [45] At first, he walked across, but in 1998 Segrue and Morgan cleared enough that Morgan could drive a vehicle back. [46] Segrue gave Morgan permission to put a gravel roadway in. [47] Morgan also brought fill in with trucks and changed the grade of the property. [48] Morgan raised the land and levelled it. [49] About 4-5 feet from the property line with the Courtright property Morgan put in a French drain.[50] They removed a shed. [51]

The March 7, 2012 deed from Morgan to Segrue makes the conveyance subject to the easement for the benefit of the Martin lot, "[t]ogether with the right to the grantee herein, his heirs, successors, and assigns, to share the use of a right-of-way for ingress and egress, running along the easterly side of the lands of Courtright and the lands herein conveyed, said right-of-way being

---

[39] *June 21, 2023, p. 110-111.*
[40] *June 21, 2023, p. 89-93.*
[41] *6/27/23, 36-38; Ex. 4.*
[42] *6/27/23, 83-84.*
[43] *6/27/23, 134-136.*
[44] *June 21, 2023, p. 89-93.*
[45] *6/27/23, 86.*
[46] *6/27/23, 87.* The aerial photographs 2, 3 and 4 demonstrate the progression of changes to Segrue's various lands from 2001 to 2021, including the clearing of the land. *6/27/23, 36-38.*
[47] *6/27/23, 95-96; Ex. 4.*
[48] *6/27/23, 95-96.*
[49] *6/27/23, 97.*
[50] *6/27/23, 97.*
[51] *6/27/23, 95-96.*

a minimum of 50 feet wide." [52] *See also, October 19, 1997 Deed from Fariello to Segrue recorded October 31, 1997, in the Schenectady County Clerk's Office Book 1525, page 345 (former LaPan property).*[53] This 50-foot easement is now located on land currently owned by Segrue, along the easterly boundary of the old Courtright lot, now owned by Serth. Serth asserts the rights he acquired with the old Martin lot grants him the right to access this easement. Segrue blocked the old "roadway" (over the old Morgan lot) towards the old Martin lot, with vehicles, asserting that Serth does not have easement rights to this right-of-way.[54]

According to Segrue, Blackstone did the original survey map for Keith Morgan. [55] The survey does not show that Serth has a defined deeded right-of-way. It shows that there was an easement on Segrue's 21.5-acre parcel that went to the Morgan property to allow access to the Morgan property. [56] The Court notes that the Blackstone survey was not admitted into evidence as Segrue's counsel objected to same.[57] Therefore, Segrue's hearsay testimony about the Blackstone survey will not be considered. The roadway over the Morgan lot in the back is extremely faded, and trees are growing in now. [58] There is no visible appearance of the previous roadway going in or back to the former Martin lot that Serth currently owns.[59] As of June 11, 2021, Serth has continued to access the old Martin lot by crossing over the property jointly owned by himself and his wife (the old Courtright lot). [60]

Regarding the old Martin lot, Serth argues that there is a right of ingress and egress over Lot No. 3, owned by James Segrue. [61] The Lot No. 3 easement is noted as Deed Reference 2 on the

---

[52] Ex. G; *June 21, 2023, p. 50-54.*

[53] Ex. H.

[54] *June 21, 2023, p. 131-136; 6/27/23, 21; Exs. R, S; July 10, 2023, 34, 38-39, Ex. X-1.*

[55] *July 10, 2023, 37.*

[56] *July 10, 2023, 37.*

[57] At trial, Defendant's counsel objected to all deeds and filed survey maps offered into evidence by Plaintiff despite the applicability of the CPLR 4522 hearsay exception. The Blackstone survey was not admitted as it had not been filed in the County Clerk's office.

[58] *6/27/23, 64.*

[59] *6/27/23, 65.*

[60] *6/27/23, 47-48.*

[61] *June 21, 2023, p. 89-93; Ex. BB.* Serth became friends with Bruce Martin, Jr. in 1968 and they used to ride snowmobiles and four-wheelers on the property. 6/27/23, 40. They went up over the Martin lot and Segrue's lot which is Lot #3 and over the 21.5-acre lot that has been reduced by parcels being deeded out. *June 21, 2023, p. 168-171;*

Van Guilder survey (Exhibit B), and is recorded in the Deed from DiCaprio (formerly Martin) to Serth dated January 17, 2021, and recorded in Book 2050, Page 789[62] as:

> Being the same rights of way described from Charles F. Regeles and Madeline S. Regeles, his wife, to Edward A. Martin, Jr. and Dolores A. Martin, his wife, by deed dated August 29, 1973, and recorded in the Schenectady County Clerk's Office on July 8, 1974, in book 980 at page 439.

The deed from the Regeles to the Martins is in evidence as Exhibit F. With the land conveyed, it further provided:

> In addition to the foregoing the grantors herein for their heirs, representatives, successors and assigns hereby convey to the grantees, their successors and assigns a right of way for ingress and egress to the premises herein conveyed over lands belonging to the grantors and known and distinguished as Lot No. 3 on Map of the property belonging to the Estate of William Stuart Gahagan at Mariaville Lake, Schenectady County, made by S.J. Costello, Lic. Prof. Engineer dated June 20, 1935, and filed in the Schenectady County Clerk's Office on June 24, 1935.
>
> Together with the right to the grantees herein, their heirs, successors and assigns, to share the use of a right of way located across Batter Street road and opposite the front of Lot 3 described owned by the grantors herein, said right of way extending to Mariaville Lake.

Weed testified that the deed from DiCaprio to Serth provides a right-of-way for ingress and egress over three different parcels owned by Segrue. [63] The 2021 deed details: "together with a right-of-way for ingress and egress to the above-described parcel herein conveyed, running from the north side of Lot No. 3, through the lands belonging formerly to Regeles, now owned by Segrue"].[64] And also through lands formerly of Morgan, now of Segrue, contiguous with right-of-way for ingress and egress to the above-described premises herein conveyed over lands belonging formerly to Regeles, now of Segrue, and known and distinguished as Lot No. 3." [65] Weed explains that this deed describes a right-of-way crossing three parcels of land to access the parcel being conveyed, all three of those parcels that it crosses now being owned by Segrue. [66] The prior

---

6/27/23, 40. The Martin lot area was flat, there was a French drain that dried off the area and there was no issue taking vehicles from the road on lot 3 around the Courtright lot and back to the Martin lot. *June 21, 2023, p. 168-171.*
[62] Exs. B, C.
[63] *June 21, 2023, p. 21-23; Ex. C.*
[64] *June 21, 2023, p. 28; Exs. C, F.*
[65] *June 21, 2023, p. 28; Ex. C.*
[66] *June 21, 2023, p. 28.*

11

conveyance of this property between Regeles and Martin *via* deed dated August 29, 1973, states: Such easement is undefined in any type of location or width.[67]

When the Martins owned Lot No. 4, Segrue saw the DiCaprio's access the Martin lot for the first time around 2007 or 2008 by coming across the fields next to the Martin lot along Lot No. 4, by 4 x 4s.[68] The last time he saw them come access those lots was in 2012.[69] He did not observe them accessing those lots in any other manner.[70]

Defendant's Exhibit 1 is a deed from September 3, 1935, and it references an easement that runs across Lots 1, 2, 3, and 4 from the subdivision.[71] The general location is identified as beginning at the southerly boundary line of Lot No. 1 and extending northwesterly and westerly over Lots 1, 2, 3 and 4 to the barn located on Lot 4.[72] This is currently overgrown and not discernable and the barn no longer exists.[73] On his field visit, Weed was not able to observe this easement or any remnants of a barn.[74]

## LAW AND DISCUSSION

### A. SERTH HAS NOT PROVEN THAT SEGRUE VIOLATED THE AGREEMENT CONCERNING EASEMENTS, REQUIRING DISMISSAL OF HIS FIRST CAUSE OF ACTION.

The parties' Agreement requires Segrue to ensure that any trees or vegetation on the easements or easterly side of the twenty (20) foot right of way shall be maintained and trimmed so that they don't interfere with safe pedestrian and motor vehicle movements. The trees and vegetation are to be trimmed so that no branches overhang the easements at a height less than

---

[67] *Id.*
[68] *6/27/23, 88-89; Ex. B.*
[69] *6/27/23, 88-89, Ex. 4.*
[70] *6/27/23, 88-89.*
[71] *June 21, 2023, p. 89-93, Ex. 1.*
[72] *Id.*
[73] *June 21, 2023, p. 89-93, 110-111; Ex. 1.*
[74] *June 21, 2023, p. 89-93.*

12

twelve (12) feet off the ground. The Agreement details how snow plowing is to be done: along Easement 2, snow is to be plowed away from the Segrue residence and toward the westerly side of the property (Segrue is to ensure that no vehicles are parked on the westerly side so as to interfere with Serth's ability to plow to that side); if snow needs to be plowed on the easterly side, it should not interfere with Segrue's access to his property; along Easement 1, plowed snow should not prohibit Segrue's access to his residence or his property to the north of the easement area.

To establish that the Agreement was violated because the trees weren't trimmed as required, Serth had Licensed Professional Surveyor Kevin Weed testify about conditions he observed when he visited the easement site in June 2023 and, later he introduced a series of ten photographs depicting trees along the easements during the testimony of defendant James Segrue. However, the photographs were taken November 19, 2022, more than a year after the commencement of the action[75] and Weed's site visit was nearly two years later[76]. Segrue testified that he trims the trees 3-4 times a year and denied that any impermissibly overhung the easement. Additionally, no evidence was introduced as the height of any tree limbs overhanging the right of way.

Serth also claimed that vehicles parked in the easement area prevented snowplowing. However, the Complaint does not allege that the Agreement was violated by thwarting snowplowing efforts. Serth did assert in the Second Cause of Action of his Complaint that vehicles blocked his right of way access; that cause of action is addressed below.

Serth also claims that his right to park vehicles/equipment on the easement was violated by Segrue's threats when he did so. In paragraph "h" of the Agreement, the parties agree that they shall not block access to the eight foot paved portion of the driveway and the continuation thereof by parked motor vehicles, boats, jet skis or other items and that the parties shall have the ability to park motor vehicles, boats, jet skis or other items on other portions of the easements so long as they do not interfere with the Serths' ingress or egress over the easements. Plaintiff's Exhibit X-4, a letter dated June 22, 2021, from Segrue to Serth establishes that there was a disagreement about

---

[75] *7/10/23, pp 83-84*
[76] *6/21/2023, p 45*

Serth's storage of a jet boat, jet ski and trailers on unpaved portions of the easement. Plaintiff's Exhibit O depicts the jet boat and jet ski off the paved portion of the easement. However, the photograph is dated June 23, 2021, a date after the dates mentioned in Exhibit X-4 when the boat, jet ski and trailers were moved from the area originally complained about. Consequently, Plaintiff's burden has not been met given Segrue's allegations concerning the problems with the location of the items prior to June 13, 2021. While Serth also intimates that his parked vehicles were damaged, he admits that he doesn't know who damaged them. In any event, Serth reported that his vehicles were damaged while parked on his "Martin lot", not while parked in the easement.[77]

Segrue testified that any time his wife's car has blocked the easement it was temporary, for a short time while they were quickly running into their home.

Serth admitted during his testimony that he has always had the ability to safely access the old Courtright lot by pedestrian or motor vehicle traffic. He asserts though that this is only in one direction. Regarding the trees, there has been no showing that the trees were in violation of the Agreement as the pictures submitted into evidence do not depict them overhanging.[78] Moreover, there is no evidence that Segrue damaged any equipment belonging to Serth, and no evidence as to the value of the items, or the cost to repair or replace them. Accordingly, this Court finds that the Agreement was not violated by obstruction of the easement as alleged in Plaintiff's First Cause of Action.

## C. **SERTH PROVED DEFENDANT DENIED HIM INGRESS AND EGRESS OVER THE FORMER "MORGAN" LOT TO ACCESS HIS "MARTIN" LOT**

An easement appurtenant passes with the land itself—and when the benefited and/or burdened parcels are transferred, the rights and obligations relating to the easement can pass to the subsequent owner(s). *See, Easement appurtenant*, 1 N.Y. Law & Practice of Real Property § 18:8 [2d ed.]. Such an easement can be created where the right in question: (1) is conveyed in writing;

---

[77] Plaintiff's Ex. V, New York State Police Support Deposition
[78] *Ex. O.*

14

(2) is subscribed to by the person creating the easement; and (3) burdens the servient estate for the benefit of the dominant estate. *Webster v Ragona*, 7 A.D.3d 850, 853 (3d Dept. 2004); *Niceforo v. Haeussler*, 276 A.D.2d 949, 950 (3d Dept. 2000). New York courts have held that "[o]nce created an easement appurtenant may be extinguished only by abandonment, conveyance, condemnation or adverse possession." (*Niceforo*, 276 A.D.2d at 949).

An express easement may be lost by the nonuse for its intended purpose with clear and convincing evidence of the intent to abandon the easement, for less time than it takes to establish adverse possession. *See, Consolidated Rail Corp., v. MASP Equip. Corp.*, 67 N.Y. 2d 35 (1986); *450 West 14th St. Corp. v. 40-56 Tenth Ave, LLC*, 187 Misc. 2d 735 (Sup. Ct. NY Cty. 2001); *Janoff v. Disick*, 66 A.D. 3d 963 (2d Dept. 2009); *Rabinowitz v. Goldstein*, 78 N.Y.S. 2d 882 (Kings Cty. Sup. Ct. 1948). The acts relied upon to demonstrate proof of an intention to abandon must be unequivocal and must clearly demonstrate the owner's intention to permanently relinquish all rights to the easement. *Id.* An express easement may also be lost by adverse possession if the owner or possessor of the servient estate claims to own it free from the private right of another, and excludes the owner of the easement, who acquiesces in the exclusion for the prescriptive period. *Janoff, supra,* 66 A.D. 3d, at 963.

To establish a prescriptive easement the evidence must be clear and convincing to support a finding that the use of the easement was open, notorious, hostile, and continuous for a period of ten years. *Mastbeth v. Shiel*, 218 A.D. 3d 987 (3d Dept. 2023). It is well-established that the owner of the servient estate has the right to use its land in any manner that does not unreasonably interfere with the rights of the owner of the easement. *Wilson v. Palmer*, 229 A.D. 2d 647 (3d Dept. 1996). The "owner of property that is subject to an easement has a passive duty to refrain from interfering with the rights of the dominant owner." *Tagle v. Jakob*, 97 N.Y. 2d 165 (2001). Serth cited to out of state law that is not binding authority over this Court. *See, Palmer v. Yancey Lumber*

*Corporation*, 294 Va. 140 (Vir. Sup. Ct. 2017); *Clearwater Realty Company v. Bouchard*, 146 Vt. 359 (Vt. Sup. Ct. 1985).

Serth asserts that he has the right to access the Martin property over parcels of land that Segrue owns. The parties, and this Court, have accepted that there is an easement (Easement 2) from Batter Street along the westerly side of Lot No. 3 where it borders Lot No. 4, that extends to at least the beginning of the old Courtright property where Easement 1 is located. At issue here is whether Serth has any right of way on Segrue's land along the full length of the "Courtright" lot to the former lands of Morgan (now Segrue) and westerly across the "Morgan" lot to access his "Martin" lot. As stated earlier, the March 7, 2012 deed from Morgan to Segrue makes the conveyance subject to the easement for the benefit of the Martin lot, "[t]ogether with the right to the grantee herein, his heirs, successors, and assigns, to share the use of a right-of-way for ingress and egress, running along the easterly side of the lands of Courtright and the lands herein conveyed (The "lands herein conveyed" being the Morgan lot), said right-of-way being a minimum of 50 feet wide." Serth's predecessor Martin was granted, by deed dated August 29, 1973, a right of way across the "Morgan" lot but such easement was undefined in any type of location or width. Serth's easement along the eastern boundary of his "Courtright" Lot to the "Morgan" Lot and across the "Morgan" lot to access his "Martin" lot is an express easement as it was created by deeds recorded in the County Clerk's office. *Bonnieview Holdings Inc. v. Allinger*, 263 A.D.2d 933 (3d Dep't 1999). This Court therefore finds and determines that the Serths have a right of way for ingress and egress, running along the full length of the easterly side of the former lands of Courtright and easterly side the former Morgan lot, such right of way being a minimum of 50 feet wide.

As to the easement claimed across the former Morgan lot, it is important to note that in describing an easement in a grant, all that is required is a description that identifies the land that is

16

the subject of the easement and expresses the intention of the parties. No set form or particular words are necessary. Generally, any words clearly showing the intention to grant an easement that is grantable by law are sufficient. *Weil v. Atlantic Beach Holding Corp.*, 1 N.Y.2d 20, (1956); *Evans v. Taraszkiewicz*, 125 A.D.2d 884, (3d Dep't 1986). The fact that a grant does not give the precise location of an easement is not fatal to the finding that the easement exists. *Wilcox v. Reals*, 178 A.D.2d 885, (3d Dep't 1991). Where the grant of an easement of way does not definitely locate the way, a reasonable and convenient way for all parties is implied, in view of all the circumstances. *New York Carbonic Acid Gas Co. v. Geyser Natural Carbonic Acid Gas Co.*, 55 AD 128 (3d Dept 1900). If an easement of way is created but not located by a grant, the owner of the servient tenement has, in the first instance, the right to designate the location, provided the person exercises that right in a reasonable manner, with regard to the suitability and convenience of the way so located to the rights and interests of the owner of the dominant tenement. *Mosher v. Hart*, 157 AD2d 931 (3d Dept 1990); *Pomygalski v. Eagle Lake Farms, Inc.*, 192 AD2d 810 (3d Dept 1993). If the owner of the servient estate fails or refuses to locate the way, the grantee acquires the right to select a location, having due regard to the interests, rights, and convenience of the other party. *New York Carbonic Acid*, supra.

To the extent that Segrue attempts to argue that any easement across his property for the benefit of the "Martin" parcel has been extinguished by non-use, the forfeiture of easements is not favored in the law. The general rule is that an easement created by grant, express or implied, can be extinguished only by abandonment, conveyance, condemnation, or adverse possession. An easement created by grant is not extinguished as easily as those that arise by prescription, user, or necessity. Segrue offers no substantive testimony to support any of the permissible bases for extinguishment or of any intent by the Serths or their predecessors to abandon the easement. The

17

only expert testimony, that of Weed, is that Serth has acquired by deed an easement across the former lands of Morgan as successors in title to the Martins, but that easement is not protractible. This Court, therefore, finds that Serth has an easement across the former lands of Morgan for ingress and egress, which is not defined as to location or width and is not protractible. The Court will permit Segrue to attempt to define a reasonable location and width for the easement. If Segrue cannot or does not do so within thirty days of the date of this Decision, Order and Judgment, then the Court will permit Serth to submit a proposed description to the Court and Segrue. If the Court finds such submission is not reasonable, the Court will fashion the easement based upon the parties' proof of their rights, interests and convenience in the affected area.

The proof demonstrates that Segrue has blocked any form of access back across his lands (principally that parcel formerly the Morgan lot) with vehicles. Serth requests damages, including punitive damages, for every day that he has been prevented from using the Morgan easement. Punitive damages may only be awarded upon a showing of willful, wanton, or reckless conduct such that is morally culpable or actuated by evil and reprehensible motives. *Taylor v. Dyer*, 190 A.D. 2d 902 (3d Dept. 1993). Serth has not made any showing that Segrue engaged in willful, wanton, or reckless conduct that rises to the level necessary to establish a basis for punitive damages. While Segrue's actions were willful, they were based upon his belief that no easement or right-of-way across the former Morgan lot existed so the Court cannot deem such acts wanton or reckless rather than misinformed.

### D. GRANT OF PERMANENT EASEMENT

To create an easement by express grant, plain and direct language must be used that evidences the grantor's intention to permanently provide a use of the servient estate to the dominant estate. *Marino v. Mazzuoccola*, 191 A.D. 3d 969 (2d Dept. 2020). The extent of an

18

easement claimed under a grant is generally determined by the language of the grant. *Id.* A failure to provide the precise location of the easement is not fatal to a finding that an easement was intended. *Id.* If the language of the grant is ambiguous or unclear, the court will consider surrounding circumstances tending to show the grantor's intent in creating the easement. *Id.*

Serth seeks a Declaratory Judgment declaring that he has a permanent easement arising from the express easements granted by the deeds. As the Agreement already addresses many of the deeds at issue, the Court shall not address those deeds and the right of way arising from the 80 by 50-foot easement alongside Lot No. 3, Lot No. 4, and the old Courtright property. Serth testified that he used to access the Martin property in 1986 *via* four-wheelers and snowmobiles while he was friends with Bruce Martin.[79] They went up over the Martin lot and Segrue's Lot No. 3 and over Segrue's 21.5-acre lot and across the Morgan Lot down to the Martin Lot. [80] It appears clear that the easement over the old Morgan lot to the former Martin lot was granted to allow for access up the easement from Batter Street, that is at least partially identified in the Agreement. Accordingly, this Court finds the deeds and testimony of Weed establish an express easement across the old Morgan lot for ingress and egress to the former Martin lot has run will the land for the benefit of Serth and encumbers the land of Segrue.

**B. SERTH'S CLAIM FOR THE RIGHT TO CLEAR ANY OBSTRUCTIONS ON THE FULL WIDTH OF THE RIGHT-OF-WAY AND TO CONSTRUCT A TWO LANE ROAD FOR TWO WAY TRAFFIC WITH TEN FEET OF ADJACENT LAND CLEARED ON EACH SIDE IN THE RIGHT OF WAY IS NOT SUPPORTED BY LAW.**

In *Abbey Family Trust*, the Third Department detailed: "[a]s a rule, where the intention in granting an easement is to afford only a right of ingress and egress, it is the right of passage, and not any right in a physical passageway itself that is granted to the easement holder." *Abbey Family Trust v. Matthews*, 217 A.D. 3d 1158 (3d Dept. 2023); *see also, Le Sayer v. Squillace*, 14 A.D. 2d 961 (3d Dept. 1961)(no need to extend "unless extenuating circumstances are presented which do

---

[79] 6/27/23, 40.
[80] *June 21, 2023, p. 168-171;* 6/27/23, 40.

not appear here"; *Albright v. Davey*, 68 A.D. 3d 1490 (3d Dept. 2009); *Solow v. Liebman*, 175 A.D. 2d 120 (2d Dept. 1991)("[t]he rights of an easement holder are measured by the purpose and character of the easement. The owner cannot materially increase the burden of the servient estate or impose new and additionally burdens on the servient estate"); *Wechsler v. New York*, 147 A.D. 2d 755 (3d Dept. 1989) ([t]he nonpossessory characterization of plaintiff's interest accords with the legal nature of the easement and does not give the holder of the easement a right to maintain or construct permanent structures"). Additionally, "[a] right of way along a private road belonging to another person does not give the easement holder a right that the road shall be in no respect altered or the width decreased, for his right is merely a right to pass with the convenience to which he has been accustomed. *Id.* The court must look to the extent and nature of an easement as determined by the language contained in the grant, "aided where necessary by any circumstances tending to manifest the intent of the parties." *Id.* "In determining the extent of an easement, it must be construed to include any reasonable use to which it may be devoted, provided that the use is lawful and is one contemplated by the grant." *Id.*

Here, the Agreement acknowledges the previously granted Easement 1 as a right of ingress and egress and specifically adopts the delineated metes and bounds description of a 50 foot by 80-foot easement by reference to the prior deeds. Moreover, Easement 2 is delineated and defined as including the entire eight (8) foot paved driveway and twelve (12) feet on the westerly side of the paved driveway (the left side of the driveway when looking up the driveway from Batter Street), again referencing the prior deed of conveyance. As the Agreement clearly states that the easements are merely a right to ingress and egress, Serth is entitled only to the right to pass with the convenience to which he has been accustomed. He has admitted he has been able to safely do. There is no sufficient showing that changes to the easement acknowledged to exist in the Agreement Concerning Easements are necessary. The easement along the easterly boundary of the former Courtright and Morgan lots is specifically defined and has been previously improved. Again, there is no showing that the present condition is inadequate for Serth's purposes. The not protractible easement across the former Morgan lot is yet to be defined but any such definition will

20

need to be reasonable, considering the interests of both parties, the historical purpose and use. Accordingly, as Serth's request for the right to clear any obstructions, expand the right of way to a two-lane road for two-way traffic, and to clear ten feet of land on each side of the any of the easements clearly exceeds the scope of the language of the Agreement, and the prior grants, it is hereby denied.

## THE COURT'S RULING

ORDERED, that Plaintiffs Joseph Serth and Christine Serth's First Cause of Action alleging that James Segrue violated the Agreement Concerning Easements dated December 6, 2019, is hereby denied and dismissed; and it is further

ORDERED, that Plaintiffs Joseph Serth and Christine Serth's Second Cause of Action alleging that James Segrue denied him access to the deeded easement along the easterly boundary of the lands formerly of Courtright and the lands formerly of Morgan (50 feet by 200 feet) is granted to the extent that Segrue has admittedly denied access but no monetary damages are awarded and same has not been proven; and it is further

ORDERED, that Plaintiffs Joseph Serth and Christine Serth's request for a judgment entitling him the right to clear any obstructions on the full width of the right-of-way and to build and construct a two lane road for two way traffic with ten feet of adjacent land cleared on each side in the right of way for placing snow during the winter is hereby denied; and it is further

ORDERED, that Plaintiffs Joseph Serth and Christine Serth's Third Cause of Action for Declaratory Judgment declaring that Serth has a permanent easement arising from the express easement granted by the deeds between the former Morgan lot and the former Martin lot is hereby granted, but remains non-protractible so that the Serths may invoke the Court's jurisdiction to have Court designate the easement's location if the parties are unable to fix its location; and it is further

ORDERED, that Plaintiffs Joseph Serth and Christine Serth's request for punitive damages is hereby denied but Plaintiffs are entitled to their costs and disbursements; and it is further

21

ORDERED that this decision constitutes the Order of this Court and Plaintiffs may submit a proposed Judgment and Bill of Costs on notice to counsel for Defendant.

Dated:    January 26, 2026

at Schenectady, New York

_____
HON. MICHAEL R. CUEVAS
Supreme Court Justice

## EXHIBITS

Plaintiffs:

| | |
|---|---|
| A | Easement Agreement |
| B | Survey Map |
| C | Deed |
| D | Deed |
| E | Right-of-way Agreement |
| F | Deed |
| G | Deed |
| H | Deed |
| I | Deed |
| N | Photograph |
| O | Photograph |
| P | Photograph |
| Q | Photograph |
| R | Photograph |
| S | Photograph |
| U | Letter |
| X1 | Letter |
| X2 | Letter |
| X3 | Letter |
| X4 | Letter |
| X5 | Letter |
| X6 | Letter |
| X7 | Letter |
| X8 | Letter |
| X9 | Letter |
| X10 | Letter |
| X11 | Letter |
| Y | Letter |
| Z | Letter |
| AA | 1968 Aerial Photograph |
| DD | Photos 18-27 |
| EE | Summons with Notice |

[* 22]

<u>Defendant</u>

| | |
|---|---|
| 1 | Deed |
| 2 | 2001 aerial photo |
| 3 | 2011 aerial photo |
| 4 | 2021 aerial photo |
| 5 | Photo |
| 6 | Photo |
| 7 | Letter and photo |

[* 23]